## Doggett, Bassett & Hills Co.

### v.

### Edward Bates. for use, etc.

*Insolvency—Sale to Creditor—Reservation of Surplus—Chattel Mortgage—Attachment—Garnishment—Value of Goods—Competency of Witnesses.*

1. The sale and transfer by a debtor of his personal property to a creditor to sell and pay his debt, the debtor reserving the surplus, is in effect a chattel mortgage. It differs from an assignment to trustees for the payment of specific debts, with a reservation of the surplus to the assignor, as such surplus remains within the reach of other creditors by garnishee process or other proper proceeding.

2. In the case presented, it is *held:* That the contract between the defendants and the debtor is valid as a chattel mortgage: and that certain incompetent witnesses were improperly permitted to testify as to the value of the stock of goods in question.

[Opinion filed November 18, 1887.]

Appeal from the Circuit Court of Piatt County; the Hon. J. F. Hughes, Judge, presiding.

Messrs. Thomas J. Smith, Flower, Remy & Gregory and S. R. Reed, for appellant.

Messrs. Lodge & Huston and Stubbs & Baird, for appellee.

Conger, P. J. In January, 1886, Edward Bates, a merchant at Mansfield, in Piatt County, was in failing circumstances. He had already paid one creditor some $1,600, by permitting such creditor to take that amount from his stock of goods. On January 30th, D. P. Erwin & Company, creditors of Bates, by their attorney, were at Monticello, the county seat, taking steps to attach the goods and property of Bates.

The attorney of appellants, who were also creditors of Bates, upon that day, the 30th of January, went to Mansfield

to secure their claim. He found the store closed, and after some negotiation the following contract was executed between Bates and appellants, Doggett, Bassett & Hills Company, through their attorney, T. J. Smith.

" Doggett, Bassett & Hills Co., of Chicago, Illinois, has this day bought of Edward Bates, all his stock of goods, consisting of dry goods, boots and shoes, groceries, notions and all other articles of merchandise now contained in a store room on the west side of Jefferson street, in the Village of Mansfield, Illinois. Said store room or building known as the J. W. Walker building. And as a consideration therefor I acknowledge the receipt and full payment of the sum of $1,288.03. And the said Doggett, Bassett & Hills Co. agree to pay to said Edward Bates whatever net sum of money tha can be realized from the sale of said stock, either by retail or otherwise, which may be considered the most judicious by the said Doggett, Bassett & Hills Co., after the said Doggett, Bassett & Hills Co. shall have fully paid all expenses, costs, charges and outlays which may be incurred in reducing said stock to cash. Said costs, charges and expenses shall include reasonable attorney's fees in case of litigation. It being the intention to account to said Bates whatever said stock shall bring by the sale of the same as aforesaid, over and above the sum of $1,288.30, and the said expenses, costs and charges as aforesaid.

Edward Bates,

Doggett, Bassett & Hills Co.,

By T. J. Smith.

Attest:  J. W. Walker,
        January 30, 1886.

Appellants were served as garnishees in the attachment suits of D. P. Erwin et al. They answered, setting up their purchase under the foregoing contract; that they had immediately taken possession of said stock of goods, sold and reduced the same to cash, and that after the payment of the necessary expenses of such sale, and the sum of $1,288.03 due them from Bates, there remained in the hands of Smith, their attorney, the sum of $197.16.

A jury was waived and trial had by the court, and judgment rendered against appellants, as such garnishees, for $2,500.

Upon the question of the value of the stock of goods the court permitted, against objection, witnesses to testify who were clearly not qualified. One of these witnesses will suffice, as an illustration: John Ribie stated "that he resided at Mansfield; had been constable for a long time; had loafed around stores a good deal; have levied on and invoiced goods before; was in Bates' store and seen stock; helped Walker take his stock out, and saw prices on some of the goods Walker got; saw no prices on any goods left in the store; I guess there was about $6,000 worth of goods."

While questions of quantity and value are generally merely matters of opinion, still those expressing an opinion thereon should first show that they have such knowledge and experience in reference to the subject under inquiry as to give their opinions greater weight and value than mere guesses. We think a number of witnesses were permitted to testify upon the question of value who, under the most enlarged and liberal rule, were not competent.

The next point we shall notice is as to the validity of the contract of purchase. Upon this question the following proposition of law was submitted to the court, and refused: "The court holds that the contract of purchase in evidence in this case, on its face, is a valid contract." The Circuit Court, therefore, ignored entirely the claim of appellants to deduct their debt against Bates from the proceeds of the sale of the goods, but in its judgment required them to account without reference thereto. This we think was error. The contract of sale was, in fact, a chattel mortgage, and was in no sense an assignment for the benefit of creditors; hence, the provision contained in it that any surplus remaining in appellants' hands after the payment of their own debt and the expenses of the sale should be returned to Bates, is no more than would be implied by the law, and does not vitiate the instrument.

Possession having been taken of the property before any liens attached, their title was as complete as though the instru-

ment possessed the form of a chattel mortgage, and had been acknowledged and recorded in accordance with the statute.

This subject is so fully discussed in Jones on Chattel Mortgages, Sec. 352, that it is only necessary to quote his language, which is largely copied from McClellard v. Remsen, 36 Barb. 622, and is as follows:

"An assignment by a debtor of his personal property to a creditor upon trust, to sell and pay his debt, with a reservation to himself of any surplus there may be, is, in effect, a mortgage. The reservation of the surplus is only an expression of what the law would imply without a reservation, and is no evidence of a fraudulent intent. Such an assignment is to be distinguished from an assignment to trustees for the payment of specific debts, with a reservation of the surplus to himself. The surplus is always within the reach of the other creditors, and can, by a creditors' bill, or proceedings supplementary to the execution, be attached and appropriated to the payment and satisfaction of their debts. Such a disposition of a debtor's estate is, therefore, free from the weightiest objections against assignments upon trust to third persons for the payment of debts. There is no trustee interposed between the creditors and the property of their debtor. The assignee does not acquire the entire legal interest in the property conveyed subject to the trust, but a specific lien upon it; and the property is still subject to the process of the courts, and may, subject to the mortgage creditor, be devoted to the satisfaction of the other creditors' debts." To the same effect see Leitch v. Hollister, 4 N. Y. 211; Dunham v. Whitehead, 21 N. Y. 542; Wilson v. Russell, 13 Md. 494; Henshaw v. Sumner, 23 Pick. (Man.) 446; Davidson v. King, 47 Ind. 372; Godchaux v. Mulford, 26 Cal. 316; Gage v. Cheesebro, 49 Wis. 486.

Treating this contract of sale as a mortgage, no wrong, either legal or equitable, is done any one. Bates had a right to pay or secure appellants though it took every dollar of his property and left his other creditors with nothing. Appellants had but a lien to secure their debt, and the goods subject thereto could at all times be reached by the other creditors of

Bates. If appellants converted the goods into money, any surplus remaining in their hands after their own debt and proper expenses were paid, could also be reached, and if they negligently wasted the goods and failed to do their duty in selling them, they would be answerable for any loss occasioned thereby.

The Circuit Court should have ascertained, by competent evidence, what amount the appellants realized or might have realized from the sale of the goods, by the use of ordinary and reasonable care in selling them, credited them with their debt and all necessary and proper expenses, and required them to account for the surplus, if any.

Counsel for appellees cite Selz, Schwab & Co. v. Evans, 6 Ill. App. 466, as holding a contrary doctrine to the views herein expressed. There are some differences between the contract of sale in that case and the one under consideration, but if it is intended to hold in that case, when a debtor conveys directly to his creditor property to secure him, and reserves to himself any surplus there may be after the debt is paid, that such reservation of itself and alone makes the instrument void upon its face, we do not think it is sustained by the weight of authority.

We think there is nothing in the third error assigned, i. e., that any excess or surplus in the hands of the garnishees can not be reached in this proceeding. If we are correct in holding that the contract of sale was in fact a chattel mortgage, it follows necessarily that appellants would legally owe Bates any surplus remaining in their hands, and as to such surplus, could be required under proper proceedings to account for it to his creditors.

The judgment of the Circuit Court will be reversed and the cause remanded.

*Reversed and remanded.*