## GAGE and another vs. CHESEBRO, Garnishee.

·May 11 — May 27, 1880.

FRAUDULENT TRANSFER OF CHATTELS: CHATTEL MORTGAGE: GARNISH-
MENT: EVIDENCE. *(1, 2) Mortgage or assignment of chattels? (3)
Transfer of claims without formal assignment. (4) Evidence: when
bank officers not required to produce checks. (5) Evidence to repel in-
ference of fraud. (6) When one creditor may take transfer of debtor's
whole property.*

1. Where it appears that an instrument transferring title to chattels is in-
tended merely as a security, the debtor has the right of redemption, if
seasonably exercised, though there is no *express* defeasance.
2. A written instrument executed by H., after describing promissory notes
previously given by him to C. and other notes of H. indorsed by C., de-
clares that, for the purpose of securing C. "against any loss by reason
of the said notes and the said indorsements," H. sells, transfers, assigns,
and mortgages unto C. the merchandise and property described therein;
and it authorizes C. to take immediate possession of the property and
hold it for his own use and benefit, subject to the conditions that C.,
whenever he chooses, may sell so much of the property as shall be nec-
essary to pay the notes of H. to C., and thereafter hold possession of the
remaining property until the maturity of the notes indorsed by C., and
that if H. shall fail to pay these when due, C. shall pay them out of the
proceeds of the property, and render the surplus to H. *Held*, that this
is a *mortgage*, and is not void on its face for failure to comply with the
statute regulating assignments for the benefit of creditors.
3. Accounts in favor of H. against third persons having been turned over to
C. without formal assignment, C. has a right as against H. to appropri-
ate moneys collected on such accounts to the payment of H.'s indebted-
ness to him; and (in the absence of fraud) is not liable therefor as
*garnishee* of H.
4. Where, in garnishment, the account of the principal debtor with a bank,
as shown by the bank ledger, had been put in evidence: *Held*, that
there was no error against plaintiff in refusing to require the bank offi-
cers to produce the original checks.
5. Where it appeared from the examination in chief of a witness for plaint-
iffs, that the account books of the principal debtor were destroyed before
the trial, the garnishee defendant was entitled, on cross examination, to
show the *reason* for such destruction, in order to repel the inference of
an improper motive.

6. If a creditor, knowing that his debtor is in failing circumstances, takes a transfer of such debtor's whole property with an honest design to secure the payment of the debt due himself, and without any intent to defraud other creditors, the transfer is valid, as against them.

APPEAL from the Circuit Court for *Fond du Lac* County.

This was an action of garnishment, begun at the same time as the principal action, January 9, 1879. The garnishee and the principal defendant, E. B. Hunting, answered severally, denying the garnishee's liability; and issue was joined upon the answers. The question was as to the title of a stock of goods and a quantity of accounts, or their proceeds, which, prior to January 4, 1879, had belonged to the principal defendant, and on that day came into the garnishee's possession under what he claims to have been valid transfers of title from the principal defendant. The questions litigated were, whether the transfers were made in good faith and for a valuable consideration, and whether the instrument under which the garnishee claimed title to the stock of goods, was valid. This instrument, which appears to have been filed in the proper clerk's office on the day last above named, was as follows:

"Whereas I am justly indebted to *Washington Chesebro* on two promissory notes for six thousand dollars each, dated December 31, 1874, one payable in six months and one payable in twelve months after date, each drawing interest at ten per cent., and upon which no payments have been made, but I claim an offset, to apply in reduction thereof, of the sum of $665.30 by way of store account charged on my books against him:

"I am also conditionally indebted to him as co-indorser with my father, Israel Hunting, upon the following notes made and used by me:

"One note for $1.300, dated November 15, 1878, payable ninety days after date at the First National Bank of Fond du Lac:

"One note for $2,200, payable ninety days after date at the

First National Bank of Fond du Lac, and dated December 20, 1878:

"One note for $2,000, dated January 3, 1878, payable one year after date, with interest at ten per cent., now held and owned by Mrs. Christiana Lewis, but to which I claim an offset of $44.79, due on store account from Mrs. Lewis to. me:

"Now be it known, that, *for the purpose of fully securing the said Chesebro* against any loss by reason of the said notes and the said indorsements or either of them, I do hereby sell, transfer, assign, set over and mortgage unto the said *Chesebro*, his heirs and assigns forever, all my stock in trade, wares, merchandise and fixtures, of every kind, quality and description, situated in the store occupied by me in the city of Fond du Lac, Wisconsin, and known as No. 486 on Main street in said city, and also my two peddling carts or wagons used by me in and about my business, with the contents thereof, consisting of a general assortment of Yankee Notions and merchandise of the same kind and quality kept in my store, and being part and parcel of my stock in trade, together with the teams and harnesses belonging thereto.

"And I hereby authorize the said *Chesebro*, his heirs and assigns, to enter into the immediate possession of the mortgaged property and every part and parcel thereof, and take and hold the same to his and their proper use, benefit and behoof forever.

"Subject however to the following conditions:

"That the said *Chesebro*, his heirs and assigns, may, whenever he or they shall choose so to do, proceed and sell so much of the said mortgaged property for cash, either at public or private sale or both, and at wholesale or retail or both, as will best promote the interest of all concerned, and secure the largest price at the least expense, and as may be necessary to pay the said first two notes, with the interest thereon, after deducting therefrom the offset claimed by me as aforesaid, and also to pay the reasonable costs and expenses attending such

sale; *and thereafter shall hold possession of the mortgaged property remaining unsold until the maturity of the said several notes as aforesaid; and whenever and as fast as either of said notes shall mature and I shall have neglected to pay the same, then the said Chesebro or his heirs and assigns are authorized to proceed and sell of the remaining mortgaged property, in the same manner and subject to like restrictions, sufficient to raise money enough to pay the same, with interest and costs and expenses attendant upon such sale,* — except that in the payment of the note of 'Mrs. Lewis the offset aforesaid shall be deducted from the amount of said note.

"And after the whole amount of said notes and interest, less the offset aforesaid, shall be fully paid, and the cost and expenses of executing this mortgage and taking care of said mortgaged property shall be fully paid, the said *Chesebro*, his heirs and assigns, shall render the remainder of said mortgaged property, if any there be, and any surplus of cash arising from the proceeds of sales, if any there be, to me.

" In witness whereof, I have hereunto set my hand and seal, at Fond du Lac, this 2d day of January, 1879.

"In presence of         E. B. HUNTING [SEAL.]

"THOS. W. SPENCE.

" WM. SCHLEIDEN."

At the trial, T. W. Spence, Esq., as a witness for the plaintiffs, testified that he signed as a witness the instrument above set forth, and was one of *Chesebro's* attorneys who put in his answer as garnishee, in this case. The witness was then asked whether the answer of the principal defendant was drawn in his office and under his direction; whether he had been Hunting's attorney in his general business prior to January 4, 1879, etc.; but the questions were objected to by defendant, and ruled out. Another objection to the rulings of the court upon evidence offered, is sufficiently stated in the opinion.

The court refused to instruct the jury at plaintiffs' request, that the instrument above set forth was void on its face, or

that the evidence showed the garnishee to have come into possession of and collected accounts owing to the principal defendant, to an amount greater than plaintiffs' judgment against said defendant, and without the garnishee having any title to or lien upon said accounts. There was a verdict for the defendant; a new trial was refused; and plaintiffs appealed from a judgment on the verdict.

The cause was submitted for the appellants on the brief of *Shepard & Shepard.*

For the respondent there was a brief by *Coleman & Spence,* his attorneys, with *Edward S. Bragg,* of counsel, and oral argument by *Mr. Spence.*

COLE, J. We are of the opinion that the judgment in this case must be affirmed. The learned counsel for the plaintiffs attacks, with much force of argument, the validity of the instrument executed by Hunting, wherein he transfers the property there described to the garnishee. He insists that it is in the nature of an assignment for the benefit of creditors, and is void on its face because it does not conform to the statute regulating voluntary assignments. But we do not agree with counsel as to the character of the instrument. To our minds it more nearly resembles a chattel mortgage given to secure the payment of the notes executed by Hunting to the garnishee, and also to secure the garnishee against liabilities which he had assumed for Hunting. For, after describing the two promissory notes which Hunting had given to the garnishee, and those which the garnishee had indorsed for him, the instrument proceeds to declare that, for the purpose of fully securing the garnishee "against any loss by reason of the said notes and the said indorsements, or either of them," Hunting does hereby sell, transfer, assign and mortgage unto the garnishee the merchandise and property named. The garnishee was authorized to enter into the immediate possession of the mortgaged property, and hold the same for his own

use and benefit, subject to the conditions named. These conditions in brief were, that the garnishee, or mortgagee, might, whenever he should choose so to do, proceed and sell for cash — at either public or private sale, at wholesale or retail, as would best promote the interest of all concerned and secure the highest price with the least expense, — so much of the mortgaged property as should be necessary to pay the two $6,000 notes, after the store account was deducted therefrom, with the reasonable costs and expenses attending the sale, and thereafter hold possession of the property remaining unsold, until the maturity of the indorsed notes, which, if Hunting should fail to pay them when due, the mortgagee was to pay out of the proceeds of the sale of the mortgaged property, rendering the surplus to Hunting, the mortgagor.

Thus it will be seen that the instrument purports to transfer the property to the mortgagee to secure the payment of an actual present indebtedness, and also against liabilities which the garnishee had assumed. The title to the property undoubtedly vested in the mortgagee; but the mortgagor might have obtained possession of the same by discharging the indebtedness due the mortgagee, and paying the indorsed notes. It should be treated as a chattel mortgage, transferring the property to the garnishee as a security for the payment of the debts named, with the right of disposition. We do not think it is an assignment, within the meaning of the statute; and therefore it cannot be declared void because it fails to comply with the provisions of law upon that subject. The reasoning of the courts in *Peck v. Merrill*, 26 Vt., 686; *McGregor v. Chase*, 37 Vt., 225; *Low v. Wyman*, 8 N. H., 536; *Barker v. Hall*, 13 N. H., 298; *Dana v. Stanfords*, 10 Cal., 269; *Lawrence v. Neff*, 41 Cal., 566, is strictly applicable to the instrument before us. It is true, there is no defeasance in the instrument, nor was it essential there should be, to give Hunting the right to reclaim the property upon the payment of the debts and liabilities therein mentioned; for whenever it

appears that the instrument is intended merely as a security, the debtor has the right of redemption, if seasonably exercised. But, without longer considering the question, to our minds it is plain that the instrument is nothing but a mortgage, and cannot be held void on its face for any of the objections taken to it.

But, aside from the property embraced in the mortgage, it is claimed that the answer of the garnishee shows that he held in his hands a sufficient amount of money collected on accounts turned out to him by Hunting to satisfy the plaintiffs' judgment, and which they have the right to have so applied. It is certainly true that these book accounts were not included in the mortgage. They had been turned over to the garnishee by Hunting with the other property, without any formal assignment. But still the garnishee insisted that he had the right to appropriate all the money which he had or might collect on these accounts to the discharge of Hunting's indebtedness to him. We are unable to perceive any valid ground upon which his right to do this can be denied. Suppose Hunting himself had attempted to recover this money from the garnishee: could not the latter have defeated a recovery by claiming an offset? It seems to us there could be no doubt of the right of the garnishee to do this. And if, in an action brought by the principal debtor against the garnishee, there could be no recovery of this money, upon what principle can the plaintiffs claim the right to have it applied in discharge of their judgment? "It is an invariable rule, that under no circumstances shall a garnishee, by operation of the proceedings against him, be placed in any worse condition than he would be in if the defendant's claim against him were enforced by the defendant himself. This is necessary in order to protect the garnishee's rights as between him and the defendant, and to enable the garnishee to defend against a suit which the defendant might bring against him on the same liability for which he may have been held as garnishee." Drake on Attachment, § 462.

Some exceptions were taken on the trial to the rulings of the court excluding or admitting testimony objected to, which demand a word of comment.    It is insisted that the plaintiffs had the right to the production of Hunting's checks against his account in the First National Bank of Fond du Lac.    The account of Hunting at the bank, as shown by the bank ledger, was put in evidence, and what benefit or advantage it could possibly have been to the plaintiffs to have had the checks themselves produced is more than we can understand.    It is obvious that these checks in the possession of the bank were vouchers which it might be necessary it should retain for its protection.    At all events we are unable to perceive how their production in court could have served any useful purpose for the plaintiffs, and the court committed no error in declining to compel the officers of the bank to produce them in court.

Substantially the same reason may be given in justification of the rulings of the court sustaining the objection to the questions asked the witness Spence.    That line of investigation did not tend to throw any light upon the questions involved, and therefore there was no error on the part of the court in checking it.

Again, it is said that the witness Schleiden's statement of the reason why the account books were destroyed, was improperly received.    The fact that the account books had been destroyed was first mentioned or disclosed by this witness on his examination in chief on the part of the plaintiffs.    It was certainly entirely competent, on cross examination, to ask the witness to state the reason for destroying the account books, in explanation of the testimony given in chief.    The jury could draw their own conclusion from the facts, whether the reason given for such destruction was the probable or true one or not.    But, as the plaintiffs had gone into the matter, the garnishee was entitled to all the reasons and facts about the destruction of the books, which would repel the inference that they were destroyed from some improper motive.

The other exceptions relate to the refusal of the court to give certain instructions asked on the part of the plaintiffs, and exceptions taken to certain portions of the charge. In the general charge the circuit court seems to have fairly submitted to the jury the questions whether the transaction between Hunting and the garnishee was fraudulent as to the creditors of Hunting; whether, in fact, that transaction was entered into for the purpose of cheating and defrauding, or of hindering and delaying, the latter's creditors, the garnishee taking a transfer of the property with knowledge of the fraud and to aid in its consummation; also, whether the claim of the garnishee against Hunting was an honest, *bona fide* indebtedness. The jury were in substance told that Hunting had the right to secure its payment, if it were a just claim, in the way he did, provided both parties acted honestly, without any intent of cheating and defrauding, or of hindering or delaying, Hunting's creditors. The court told the jury that a creditor, though he knew that his debtor was in failing circumstances, yet had the right to take a transfer of the debtor's whole property to secure the payment of his own debt, if the transaction was honest and not entered into with any fraudulent purpose; that if they found that the mortgage was given to the garnishee for his protection, and to secure a *bona fide* debt, with no fraudulent intent, it was a valid instrument. This, in brief, was the charge as bearing on the question whether or not the mortgage was fraudulent in fact. It seems to cover all the issues involved, and, we think, was substantially correct. Even the paragraphs excepted to are quite consistent with the views we have expressed as to the validity of the instrument on its face, and the right of the garnishee to retain any money collected on the book accounts to meet any just indebtedness due him from Hunting.

Many of the instructions asked by the plaintiffs are clearly wrong, and in conflict with what we have already said upon the case. We cannot go over them in detail. It is sufficient

to say that so far as they state correct principles of law they are given in the general charge.

The jury have found, upon the evidence, against the liability of the garnishee; and the verdict upon all these questions is certainly sustained by testimony. The judgment of the circuit court must, consequently, be affirmed.

*By the Court.* — Judgment affirmed.