MYGATT, Administrator, Appellant, vs. TARBELL, Respondent.

*May 2 — June 21, 1893.*

*Contracts: Executions: Agreement between creditors to divide proceeds of sale: Acceptance of proposition: Consideration: Evidence: Authority of attorney at law.*

1. There being a doubt as to the validity of the levy of an execution upon certain property, the attorney of M., the execution creditor, proposed to the attorney of T., another execution creditor, that they secure a proper levy of both executions upon said property, neither levy to have priority, and the proceeds of the sale to be equally divided. Afterwards T.'s execution was levied on the property, and his attorney handed to M.'s attorney an unsigned

letter stating that fact and consenting that the proceeds of the sale on T.'s execution be divided equally between T. and M., the latter assigning to T. so much of his judgment as should be paid thereby. *Held*, that such letter, if considered binding, was not an acceptance of the proposition first made, because it proposed a material change therein.

2. The prior levy of M.'s execution, even if valid, was in itself no consideration for an agreement by T. to divide the proceeds of the sale on his execution; nor would the fact that M. abandoned his levy and had his execution returned *nulla bona* constitute such consideration unless, at the time of the alleged agreement, he claimed a valid levy, and abandoned his claim by reason of and as a consideration for the promise of T.

3. The evidence in this case is *held* not to be conclusive either that M. did, at the time of the alleged agreement, claim that his levy was valid, or that T.'s attorney had authority to make such an agreement.

4. The general authority of an attorney at law under his retainer in a cause would not authorize him to make an agreement to divide with another the proceeds of an execution sale, especially where the client resided in the same city.

5. The silence of the client in regard to his attorney's lack of authority, in conversations with the other party in which the latter claimed that such an agreement had been made, would not raise an estoppel unless the other party relied thereon and changed his position on the faith thereof.

6. Testimony tending to corroborate the contention of a party that he had made a certain agreement with the attorney of the other party was admitted, against objection, before the authority of said attorney was shown. The only tenable objection to the testimony was that it was out of order, but that objection to it was not made. Afterwards, the attorney's authority not having been shown, the court directed the jury that they could not find that any such agreement had been made. No motion to strike out the testimony was made. *Held*, that its admission was not error.

APPEAL from the Superior Court of *Milwaukee* County.

Action on contract. May 4, 1888, defendant, *Tarbell*, obtained two judgments of $9,000 and $31,000, respectively, against one Burton, and on the same day execution was issued to the sheriff of Milwaukee county upon the smaller judgment. May 10, 1888, the plaintiff's intestate, Henry

M. Mygatt, obtained a judgment against said Burton for over $11,000, and issued execution thereon to the said sheriff. At the same time Mr. Maxon, Mygatt's attorney, informed the sheriff that Burton owned certain shares of stock in the Bessemer Consolidated Iron Company, a corporation of this state, and directed the sheriff to levy said junior execution thereon. The officers and books of this corporation were not in this state, but were in New York. The sheriff, in obedience to this direction, mailed a copy of the execution to one Coon, then secretary of the corporation, in New York, and Coon returned a certificate pursuant to R. S. sec. 2989, stating that at the time of the levy there were upon the books 3,581 shares of the stock of the corporation in the name of and owned by said Burton. The sheriff advertised these shares for sale under the Mygatt execution, such sale to take place on July 2, 1888. At the time the sale was to take place, Mr. Flanders, attorney for defendant, *Tarbell*, appeared and notified the sheriff that *Tarbell* would hold him liable in damages for not levying his (*Tarbell's*) execution on said stock, such execution being prior to Mygatt's, and also claiming that the levy under the Mygatt execution was invalid because the secretary was out of the state when it was attempted to be made. The sheriff thereupon adjourned the sale in order to obtain advice as to the questions so raised. After such adjournment, Mr. Maxon and Mr. Flanders had several conversations with a view to an amicable agreement by which the stock might be sold for the mutual benefit of their respective clients. Mr. Flanders requested that Mr. Maxon put his proposition in writing, whereupon, on August 10, 1888, Mr. Maxon sent Mr. Flanders the following letter:

" Gentlemen: In relation to the levy made by the sheriff of Milwaukee county upon the Bessemer Consolidated stock of John E. Burton in favor of H. M. Mygatt, I make the following proposition: That the sheriff secure a proper levy

of the executions of *Gage E. Tarbell* and H. M. Mygatt upon this Bessemer Consolidated stock, and that neither levy have priority over the other, and that the proceeds from the sale of the levies so made be divided equally between your client and mine, and that, in case there are no bids other than that made by our clients, that we each bid in one half (½) of the amount of stock levied upon, and that the stock be sold and bid in in such a way as to give neither party an advantage over the other. I make this proposition to you confidentially, and it is not to be made use of or filed, except for the purpose of carrying out this agreement in case you accept this proposition."

Mr. Maxon testifies that this proposition was accepted orally by Mr. Flanders, and Mr. Flanders testifies that he never accepted it. Further adjournments of the sheriff's sale were had by mutual consent. Mr. Maxon left the city of Milwaukee soon after August 10th, and did not return until about the 20th. He testifies to several interviews with Mr. Flanders before he left as to the best way to carry out the agreement, and as to whether his levy was sufficient, and he says he was unable to fully satisfy himself on this last point.

It appears that one Gill became secretary of the Bessemer Company, but at what date does not appear. On the 16th of August, Gill was in Milwaukee, and Flanders caused execution to be issued upon the $31,000 judgment and a levy to be made thereon by personal service upon Gill, who made the usual certificate as to Burton's shares, and stating that the levy was subject to the Mygatt levy. Upon Maxon's return, about August 20th, further negotiations were had between Maxon and Flanders, the purport of which is in dispute. Maxon claims that in these conversations Flanders recognized the former alleged agreement, and agreed that it should be carried out, and discussed the details and methods of so doing. On the other hand, Flanders denies

this, and claims that the conversations were simply renewals of attempts to settle amicably, which came to nothing. In pursuance of these further talks, and on September 12, 1888, the following paper was handed by Flanders to Maxon, *unsigned:*

"Dear Sir: Referring to your letter of August 10th in regard to the levy made by the sheriff of Milwaukee county ·upon the Bessemer Consolidated stock of John E. Burton, we would say that since that levy so made a levy has been made upon an execution in favor of *G. E. Tarbell,* by service upon the secretary of the Bessemer Consolidated Company within the state of Wisconsin of a copy of *Mr. Tarbell's* execution. We deem this expedient in view of the fact that service of your execution was made without the state of Wisconsin. Service of *Mr. Tarbell's* execution was made upon the secretary in this city while such secretary was here temporarily. On behalf of *Mr. Tarbell* we consent that the proceeds of the sale made upon *Mr. Tarbell's* execution shall be divided equally between *Mr. Tarbell* and Mr. Mygatt, Mr. Mygatt assigning to *Tarbell* so much of his judgment.as the proceeds paid to him amount to."

Mr. Flanders testified that he then told Mr. Maxon that if such a proposition as that would meet his views, if he would let him know that it was satisfactory he would submit it to *Mr. Tarbell,* and if *Tarbell* gave him authority he would make it and sign it as a definite proposition. He further claims that Mr. Maxon never accepted it, and that he never heard from it again. On the other hand, Mr. Maxon testified that this unsigned letter was handed to him as a definite proposition of settlement, and as carrying out the former agreement, and that he at once accepted it when presented to him, and waived the necessity of any signature. On the 17th of September, 1888, Mr. Maxon directed the sheriff to return the execution on the Mygatt judgment *nulla bona,* which was done. Mr. Flanders testi-

fied that this execution was not returned at his request nor in pursuance of any understanding between the parties. On the 23d of October the stock was sold under the *Tarbell* second execution for seventy-six cents a share to Gill, the secretary of the company, *Tarbell* being the only other bidder. Mr. Maxon, *Mr. Tarbell*, and Mr. Flanders were present at the sale, and some conversation took place between them just prior to the sale. The purport of this conversation is in dispute. Mr. Flanders and *Mr. Tarbell* testify that an agreement was then made by which *Tarbell* might take the risk of bidding above five cents a share on the stock, and that Maxon agreed that Mygatt would be satisfied to take two and one-half cents per share, without regard to what the stock brought. Mr. Maxon, while admitting that the discussion involved a proposition of this kind, denies that he agreed to it, and says that he disclaimed authority, in the absence of his client, to make any such arrangement. The net proceeds of the sale were $2,686.61.

After the sale Mr. Maxon demanded of the defendant $1,360.78, being one half the net proceeds of the sale, and tendered an assignment of a portion of his judgment to that amount, with provision that any amount afterwards realized on the judgment should first go to pay such assigned portion, and upon refusal brought this action for said half of the proceeds of the sale. The defendant, by answer, denied any agreement for compromise claimed by the plaintiff, but set up affirmatively the alleged agreement to accept two and one-half cents per share of stock sold, which agreement he has been and is ready and willing to carry out. Upon the trial the jury returned a verdict for defendant, and from judgment thereon plaintiff appeals.

For the appellant there was a brief by *Glenway Maxon*, attorney, and *Miller, Noyes & Miller*, of counsel, and oral argument by *Geo. P. Miller*.

For the respondent there was a brief by *Quarles, Spence & Quarles*, and oral argument by *J. V. Quarles*.

WINSLOW, J.   This case has been once before this court upon appeal from a judgment of nonsuit granted upon a former trial.   78 Wis. 351.   It was there held that the nonsuit was improperly granted, and that the cause should have gone to the jury.   As the plaintiff's evidence only was before the court upon that appeal, and the facts which that evidence legitimately tended to establish were taken as proven for the purposes of the appeal, much that was said there is inapplicable now, because upon the present trial there was a sharp conflict of evidence upon all the material issues.

The plaintiff sues defendant for one half of the amount realized from property seized upon an execution issued upon a judgment owned by defendant.   Obviously he must show his right to money so realized by some binding contract made by defendant or by his authority.   It is first claimed by plaintiff that the uncontradicted evidence shows that a contract for an equal division of the proceeds of the sale of the Bessemer stock was made by the parties.   We have stated the substance of the evidence quite fully, and it must be sufficient to say here that this contention is not supported by the evidence.   The writings introduced in evidence do not show it, because, even if Mr. Flanders' unsigned letter be considered as binding, it does not amount to an acceptance of the plaintiff's written proposition by reason of the fact that it does not accept the proposition first made in terms, but proposes a material change, namely, the assignment to defendant of a part of plaintiff's judgment.   That there was any oral acceptance of either proposition is flatly denied by the defendant's attorney who conducted the negotiations; therefore the question was properly for the jury.   If there was any agreement it was an executory agreement to divide at some time in the future the proceeds of an execution sale.   To rise above the level of a mere *nudum pactum* it must be based upon a consid-

eration either beneficial to the defendant or prejudicial to the plaintiff. The mere fact that plaintiff had secured a levy on the stock, even though it was valid, (prior to defendant's levy thereon) is evidently no consideration. If he had such valid levy he could enforce it by sale or hold the sheriff liable for failure so to do. If there was any consideration for defendant's alleged agreement to divide the proceeds of sale on his execution it must be in something that plaintiff did or refrained from doing under his alleged levy as a consideration for defendant's agreement to divide. He must have claimed some rights thereunder and surrendered some of those claimed rights as part of the agreement. The levy alone, though legal, was no consideration to defendant for a promise to divide. The consideration, if any, was the promise to surrender rights either real or claimed under that levy. So, if the fact be that the levy was legal, still if plaintiff abandoned it and returned his execution because he concluded it was worthless, and not by virtue of an agreement with defendant to abandon it and as a consideration for a promise to divide proceeds, it manifestly could not operate as a consideration. It was then a voluntary act purely. So it became necessary for plaintiff to show that he claimed a valid levy when he made the alleged agreement of division of proceeds, and that he surrendered his claims by virtue of that agreement and as a consideration for defendant's promise. He must show both these facts. If at the time of the alleged agreement plaintiff did not claim a valid levy, then there was no conflict of rights; there was nothing to compromise. An agreement of compromise implies necessarily adverse claims; but if plaintiff had no claim of levy he had no claim adverse to defendant; there was no controversy to settle, nothing for an agreement to act upon. A release of a levy which the owner admitted to be utterly void would be no consideration for a promise. Upon this branch of the case

Mygatt vs. Tarbell.

the circuit judge charged the jury — rightly, as we think —
that they should inquire whether the plaintiff at the time
of the alleged agreement to divide claimed a valid levy
upon this stock, and, if he did, whether such compromise
agreement was made, and whether plaintiff caused his ex-
ecution to be returned relying on such compromise; and, if
either of these propositions were found against plaintiff, it
was fatal to plaintiff's case, unless an estoppel was found.
by virtue of certain transactions considered later in the·
charge.

Plaintiff claims that the evidence is undisputed that he
claimed a valid levy, and that hence it was error to submit
this question to the jury. It is quite clear that plaintiff
claimed a valid levy up to July 2, 1888, when the sheriff's
sale was about to take place on the Mygatt execution; but
after this time the question cannot be said to be entirely
clear. In his letter of August 10th Mr. Maxon suggests
that a *proper levy* be secured of both *Tarbell's* and Mygatt's
executions. Mr. Maxon himself testifies that at this time
the question of the sufficiency of the first levy was dis-
cussed between himself and Mr. Flanders, and that he
(Maxon) was not able to fully satisfy himself upon the
point. Also that about August 20th he contemplated suing
out another execution and levying thereunder, and appar-
ently would have done so had there not been intervening
executions on behalf of other creditors in the sheriff's
hands. Mr. Flanders testifies that he told Mr. Maxon sev-·
eral times that in his opinion the levy was invalid, and ac-·
cording to his understanding he (Maxon) substantially came
to that conclusion himself; also that the Mygatt execution·
was never returned at his instance or request, and that he·
did not know of it until after the sale of October 23d..
Furthermore, it does not appear in any evidence in the·
case that the return of the execution was considered or·
discussed during the negotiations. We think, in this state·

of the evidence, there was no error in submitting the question to the jury.

The circuit judge also submitted to the jury the question whether Mr. Flanders had authority to make the alleged contract of compromise. It is claimed by defendant that the uncontradicted evidence shows such authority. There certainly was evidence from which it might properly have been found that Mr. Flanders had authority from his client, *Tarbell*, to make the agreement claimed; but there was also evidence to the contrary. *Mr. Tarbell* says that he told Mr. Flanders that if a proposition was made by Mr. Maxon which he (Flanders) thought was reasonable, "*if he would submit it to me*, I would state whether *I would accept it or not.*" Mr. Flanders testified with regard to the unsigned letter that if it was satisfactory to Maxon he would then submit the proposition to *Tarbell*, and if he got his authority he would make and sign the proposition. We think the evidence called for the submission of the question to the jury. The general authority of an attorney under his retainer in the cause would certainly not authorize him to make an agreement to divide with another the proceeds of an execution sale, especially where, as here, the client resided in the same city with his attorney. Weeks, Attorneys at Law (2d ed.), § 219.

The plaintiff claims that defendant is estopped from denying that there was a valid agreement of compromise or that Mr. Flanders had authority to make such agreement. This claim is founded on one or more conversations which occurred between Mr. Maxon and defendant, *Tarbell*, personally, at some time previous to the sale. Mr. Maxon claims that in these conversations *Tarbell* clearly understood that he (Maxon) understood and claimed that an agreement of compromise had been made between himself and Mr. Flanders, and that *Mr. Tarbell* did not dissent, but kept silent concerning Mr. Flanders' lack of authority to

Mygatt vs. Tarbell.

.make a binding agreement, and that he is now estopped ,from denying the fact. An estoppel may undoubtedly arise from silence where one ought to speak, but the evidence is clearly insufficient to raise an estoppel here. In the first place, the time of these conversations is not proven. It was previous to the sale, but no one attempts to fix the date. They may or may not have occurred prior to the return of the Mygatt execution. In order to amount to an estoppel, the plaintiff must have relied thereon and changed his position upon the faith thereof. *Simonsen v. Stachlewicz,* 82 Wis. 338. There is absolutely no evidence in the case that the plaintiff placed any reliance on defendant's silence, or took any step or changed his position in the least on account thereof. We find it unnecessary, therefore, to discuss the question of estoppel, or the charge of the court upon that question, further.

Some exceptions are preserved to the rulings of the court upon evidence. None of these seems to us well taken, and but one requires notice. The defendant introduced evidence, under objection, tending to show that the stock levied on was worth from three to five cents a share. The defendant had alleged in his answer that there was an agreement made between the parties on the day of and prior to the sale, by which the value of the stock for the purpose of division of the proceeds was fixed at five cents per share, and if the same sold for any larger sum defendant was to account to plaintiff for two and one-half cents a share only. Testimony had already been received tending to prove that such an agreement was made with Mr. Maxon. This was a surprisingly low price, and under the rule laid down in *Valley L. Co. v. Smith,* 71 Wis. 304, and *Bell v. Radford,* 72 Wis. 402, evidence showing the value of the stock was admissible as tending to corroborate the defendant's contention. The only tenable objection to the testimony when offered was that it was out of order, be-

cause defendant had not shown that Mr. Maxon had authority from his client to make the agreement, but this objection was not made. On the close of the case, the defendant having failed to prove Mr. Maxon's authority to make the agreement alleged, the circuit court withdrew this question from the jury, and substantially directed them that they could not find that any such agreement was made, because no authority to make it was proven. No motion to strike out the testimony was made. Under these circumstances, we do not think error can be predicated upon the ruling.

*By the Court.*— Judgment affirmed.