ANDERSON, Respondent, vs. ARPIN HARDWOOD LUMBER COMPANY, Appellant.

*February 2—February 19, 1907.*

(1–3) *Change of venue: Demand: Requisites: Action triable in several counties.* (4–13) *Contracts: Evidence: Competency: Refreshing memory: Undisputed facts: Reasonable value as evidence of contract price: Court and jury: Instructions.* (14, 15) *New trial: Newly-discovered evidence: Cumulative evidence.*

1. A motion for a change of the place of trial, under sec. 2621, Stats. (1898), must be based upon a proper demand therefor.
2. The demand for a change of the place of trial under sec. 2621, Stats. (1898), should be, in form, that the trial be had within "the proper county," naming it and stating why that is the only proper county or, where there is more than one such county, naming them and stating the reasons why the action is properly triable therein.
3. A demand for a change of the place of trial to the county in which the defendant corporation was situated and had its principal office and place of business, not stating that that was "the proper county" or that the cause of action wholly arose therein, was insufficient because, under sec. 2619, Stats. (1898), if the cause of action or some part thereof arose in another county, the action was also properly triable in such latter county.
4. In an action to recover for services in piling lumber under a contract, defendant's bookkeeper having testified without objection that he had paid plaintiff's employees as requested by him and had charged the amounts accordingly, it was competent for him to testify to the aggregate of such payments, refreshing his memory from the books.

Anderson v. Arpin Hardwood Lumber Co. 131 Wis. 34.

5. When evidence is introduced by one party tending to raise an unfavorable inference as to the claim of the adverse party, evidence of an explanatory character reasonably tending to rebut such unfavorable inference may be allowed which might in the absence of the adverse evidence be clearly inadmissible.

6. The exclusion of evidence offered to prove undisputed facts is not a prejudicial error.

7. In case of a dispute as to the contract price for work, in order to render evidence of the reasonable value thereof admissible there must be a direct conflict as to the contract price, and the difference between the claims of the parties must be so great that the reasonable value may discredit the evidence on one side and corroborate that on the other, affording some reasonable ground for believing that the contract was at the price most in harmony with such evidence.

8. Such evidence must be directed to the reasonable value of the work from the standpoint of the parties when the contract was made.

9. The question of the relevancy or competency of such evidence must be decided in each case according to the particular circumstances, and the ruling of the trial court, unless clearly wrong and prejudicial, should not be disturbed on appeal.

10. In an action to recover for work done in piling lumber, where plaintiff claimed that the agreed price was seventy cents per thousand feet and defendant claimed that it was sixty-five cents, the difference is *held* not so great as to render erroneous the exclusion of evidence as to the reasonable value of the work.

11. In an action to recover for work in piling lumber, alleged to have been done at a stipulated price, the evidence is *held* to warrant a finding by the jury that there was an agreed price for the work.

12. Refusal to instruct the jury that evidence of what defendant's bookkeeper said as to defendant being paid at the end of the season at the rate claimed by him was not evidentiary of a contract to pay for the work at that rate, was not error in view of instructions given, to the effect that the right to recover at that rate depended upon the bargain made with defendant's manager, that there was no evidence of any contract made at a later date with any other officer of defendant at that rate, and that the bookkeeper was not shown to have had any authority to make a contract for the piling, and in view, also, of a ruling by the court that, in the argument to the jury, plaintiff's counsel should not mention, as evidence to be considered, such statement by the bookkeeper.

13. The jury having been instructed, among other things, that the
burden was upon plaintiff to prove that there was a contract
and that it was as claimed by him, and that unless they found
from the preponderance of the evidence that the minds of the
parties met as to making a contract and all the terms thereof
they should find for defendant in that regard, it is *held* that
the case was not submitted to the jury on the theory that a
contract for a stipulated rate was made and that it was for
them to determine merely what that rate was.

14. Newly-discovered evidence upon a particular point is not cumu-
lative to the evidence upon that point introduced at the trial,
if it is of a different kind.

15. A new trial should not be granted because of newly-discovered
evidence unless there is substantial ground for believing that
such evidence may probably change the result.

Appeal from a judgment of the circuit court for Eau
Claire county: James O'Neill, Circuit Judge. *Affirmed.*

The action is on contract and was commenced in Eau Claire
county. This in short was the plaintiff's claim: Between
November 20, 1902, and October 29, 1903, plaintiff piled
19,087,033 feet of lumber for the defendant at the agreed
price of seventy cents per thousand feet, and during the same
time performed other work for the latter in and about its saw-
mill, for which it agreed to pay $417.25, and between the 23d
day of February, 1903, and the 13th day of April, 1903, ex-
pended money for it at its request to the amount of $6.14, pay-
ment of all of which was duly demanded and payment thereof
refused. Judgment therefor with interest thereon from the
29th day of October, 1903, with costs and disbursements of
the action, was demanded.

The defendant answered admitting that the plaintiff during
the period mentioned in the complaint performed work in pil-
ing lumber for it, alleging full payment therefor, putting in
issue the other allegations of the complaint, counterclaiming
to the effect that during such period plaintiff performed work,
labor, and services for it in piling 19,123,607 feet of lumber
at sixty-five cents per thousand feet, which was the reasonable

value of such services and the agreed price therefor, and alleging payment to plaintiff and on his account of $13,194.95, whereas the whole amount payable to him and on his account was $12,429.69 for piling the lumber and $51.25 for other labor, the aggregate being less than the amount paid to the extent of $714.01. Judgment for said sum with interest was demanded. The allegations of the counterclaim were duly put in issue by a reply.

Within the time for making a demand for a change of venue the defendant appeared in the action by attorneys, who served on the plaintiff's attorneys a demand in these words:

"Please take notice that we are retained by and appear for the defendant in the above-entitled action, and that defendant demands that the trial of this action be had within the county of Wood, state of Wisconsin, for the reason that the said defendant, at the time of the commencement of this action, resided, and still resides, in the city of Grand Rapids, in said county of Wood, state of Wisconsin. That the defendant is a corporation of the state of Wisconsin, situated and having its principal office and place of business at Grand Rapids, in said Wood county."

The plaintiff's attorneys having failed within five days after service of such demand upon them to serve on defendant's attorneys a written consent that the place of trial be changed, the defendant by its attorneys within twenty days after service of the demand moved the court to change the place of trial, pursuant to sec. 2621, Stats. (1898). The motion was supported by affidavits to the effect that plaintiff's work was done at Atlanta, Gates county (now Rusk county), Wisconsin; that he lived there during the progress of the work; that all money earned was paid at that place; that when he was through with his work he there demanded his pay at the rate of seventy cents per thousand feet for the lumber piled, which was refused, and that defendant's principal office and place of business has always been at Grand Rapids, Wood county, Wisconsin. In opposition there was an affidavit by plaintiff

to this effect: Plaintiff's home for many years prior to the commencement of this action was at Eau Claire, Eau Claire county, Wisconsin. He was only temporarily absent therefrom while serving the defendant. He performed other work for defendant than piling lumber, for the recovery of which the action was brought. The balance due had not been ascertained till after he returned from Atlanta to his home in Eau Claire. He did not make any demand for payment of the balance due him at Atlanta, but after he returned to Eau Claire and ascertained the whole amount due his attorney made a demand in writing for payment thereof. The $6.14 alleged in the complaint to have been expended for the defendant was paid out for certain specified articles in the city of Eau Claire, Wisconsin, a statement being sent by mail to the defendant at Atlanta, Wisconsin, and demand made for payment by including the same in the total claim for which payment was demanded as before stated, at which time he resided in the city of Eau Claire, Wisconsin.

The motion to change the venue was denied.

The court held that the claim for $6.14 was not established by the evidence so as to carry the same to the jury. On the other branches of the case the jury rendered a verdict in plaintiff's favor on his claim for $729.67, and a verdict wholly disallowing the counterclaim. Judgment was rendered accordingly.

For the appellant there was a brief by *Bundy & Wilcox,* and oral argument by *R. P. Wilcox.*

For the respondent there was a brief by *Wickham & Farr,* and oral argument by *James Wickham.*

MARSHALL, J.    The ruling against appellant's motion for a change of the place of trial from Eau Claire county to Wood county involves an important practice question, which must be solved by the statutes governing the matter without much aid from judicial authorities. Such statutes provide

that the proper place for the trial of a civil action against a corporation of the sort to which appellant belongs is in "the county in which it is situated or has its principal office or place of business, or in which the cause of action or some part thereof arose"—sec. 2619, Stats. (1898)·; and that "when the county designated in the summons or complaint in any action is not the proper place of trial thereof the defendant may, within twenty days after the service of the complaint, serve upon the attorney for the plaintiff a demand in writing that the trial be had within the proper county, specifying it, unless there be more than one such county, and the reason therefor;" that "within five days after service of such demand the plaintiff's attorney may serve a written consent that the place of trial be changed, and specify to what county, having the option to name one of two or more in which it may be, properly triable, and such consent shall change the place of trial accordingly;" and that "if the plaintiff's consent be not so served the defendant may, within twenty days after the service of his demand, move to change the place of trial, and shall have costs if his motion be granted."    Sec. 2621, Stats. (1898).

Thus it will be seen that the prime essential to a compulsory change of the place of trial of this action was a statutory demand.    That contemplates opportunity on the part of the plaintiff to make the change by merely serving a written consent in general terms when there is but one "proper county," and by such a consent coupled with a choice where there is more than one such county.    A motion and order is only contingently necessary.    The demand and the consent, as it has been said, work a change *ipso facto*.    *Woodward v. Hanchett,* 52 Wis. 482, 9 N. W. 468.    A motion is only necessary in case consent is not given in the manner the statute provides, and is only proper when the statutory basis therefor has been laid by service of a proper demand.

It will readily be seen, and is freely conceded, that the proper place for the trial of such an action as this is not con-

Anderson v. Arpin Hardwood Lumber Co. 131 Wis. 34.

fined to the county where the corporation is situated or has its principal office or place of business, but it extends to the county, or counties, where the cause of action or any part thereof arose.   So a demand for a change of the place of trial to the home of the corporation was not obligatory unless the cause of action wholly arose there, which we may well say in passing is not claimed.   It also seems quite plain that the statute contemplates the making of a demand sufficiently broad to show that the county where the action was brought is not the nor a proper county and containing such statements as to enable plaintiff to phrase his consent to a change with reference to the or any proper county.

The words "the proper county" are material and should be embodied in the demand.   They, by themselves, suggest that the county where the action was brought is not the county in which the corporation is situated or it has its principal office or place of business, or in which the cause of action or some part thereof arose.   The words "the reason therefor" relate directly to the words "the proper county."   They, therefore, call for a statement in the demand not only showing why the county where the action was brought was not the proper place for the trial, but considered with reference to what follows, as to consent and choice, for a statement of why the particular county to which the change is demanded is the proper place for the trial, or, in case of there being more than one county, for a statement of the reasons and disclosing the names of such counties.

It is considered that any other construction of the statute than the one suggested would not enable both parties to an action to obtain the full benefit of the plan for changing the place of trial thereof without judicial interference.   The words "specifying it, unless there be more than one such county" do not signify, it is thought, that the proper place for the trial is not required to be disclosed in the demand, except in case of there being but one such place, but suggest that where there is but one proper county the demand should be

for a change thereto. The scheme taken as a whole, as indicated, contemplates a disclosure by the defendant of every fact required to be placed before the plaintiff's attorney in order for him to respond to the demand within the full scope of his privilege. So the form of the demand should be that the trial be had within the proper county, to wit: the county of ———, followed by a statement of why that is the only proper county, or, where there is more than one such county, followed by a statement in accordance with what we have said. The significance of the words "the proper county" does not seem to have been recognized by Mr. Bryant in his work on Code Practice, as indicated at page 83, which seems to have been followed. Other standard works on practice under statutes similar to ours phrase the demand as we have indicated. 1 Estee, Pleadings (4th ed.) § 59; Winslow, Forms, § 1802.

Applying the foregoing here the demand was insufficient. It required the trial to be had in Wood county because the corporation and its principal office and place of business were situated therein. The omission of the words "the proper county" suggested that Wood county was not the sole proper place for trial. The demand at best only disclosed that such county was a proper place for the trial. It did not in any way suggest that there were not other such counties, including Eau Claire county. It might well be that the corporation was situated and had its principal office and place of business in Wood county and that the cause of action or some part thereof arose in Eau Claire or some other county. The demand not being an efficient compliance with the statute, the service thereof did not require plaintiff's attorneys to respond thereto, nor did such service create a legitimate basis for the motion which was denied. That is supported by decisions elsewhere under statutes similar to ours. *Vt. Cent. R. Co. v. Northern R. Co.* 6 How. Pr. 106; *Van Dyck v. McQuade,* 18 Hun, 376; *Estrada v. Orena,* 54 Cal. 407; *Byrne v. Byrne,* 57 Cal. 348; *Warner v. Warner,* 100 Cal. 11, 17, 34 Pac. 523.

Appellant's bookkeeper, Mr. Whitney, having testified to

the total payment to respondent, as to which according to such testimony there was no controversy, was called as a witness for the latter and under objection was allowed to testify to the amount thereof represented by the wages of respondent's employees, notwithstanding the witness stated he had no knowledge of the subject except what he gathered from the books and from a statement prepared by him therefrom. No suggestion is made by the learned counsel for appellant that such evidence was prejudicial, and we are unable to discover that it was. Moreover, the record shows the witness had testified, without objection, that he paid the men as requested by respondent and charged the amounts accordingly. Such being the case it was competent for him to testify to the aggregate of the payments, refreshing his memory from his books, which it seems is what occurred. In such cases it is not necessary to put the memoranda in evidence.

The dominant controversy was whether the contract price for handling and piling the lumber was sixty-five or seventy cents per thousand feet. Respondent having testified the first information he received that appellant only intended to allow him sixty-five was when the bookkeeper gave him a statement of his account in August, 1903, and that he then complained of the statement being wrong, in that the correct rate was seventy cents per thousand feet, but went on with his work without seeing appellant's managing officer in respect to the matter,—for the purpose of showing, by way of inference, that the contract price was sixty-five cents and giving significance to the circumstance of respondent proceeding with his work, as he did, after receiving the statement, Whitney was called to show what occurred between him and respondent in respect to the statement and why it was made at the sixty-five cent rate. He testified, in effect, that prior to the making of the statement he did not receive any information inconsistent with the way he credited respondent for his work, and that he told respondent, upon his complaining, that he did not know

of any other than a sixty-five cent rate, and if respondent was to get more he would have to see Mr. Arpin, and though respondent said he would do so he did not. On cross-examination he testified that he did not say to respondent at the time the complaint was made that the work would be paid for at a seventy-cent rate at the end of the season and figure up and state the amount then coming to him at such rate. To contradict that and to explain why respondent proceeded with his work, as he did, after receiving the statement, respondent testified on rebuttal, substantially, that Whitney, when the complaint was made, did not suggest seeing Arpin about the matter, and did not say that he did not know anything about any but a sixty-five cent rate for the work, and testified, under objection, that Whitney said when the work was done it would be figured up at a seventy-cent rate and at such rate respondent would be in credit at the time of the conversation to the amount of $23.84, and so said without going to the books, as if he had it in mind.

It seems, under the circumstances, the evidence was proper. The position of appellant, in presenting the evidence of Whitney, was that if the latter knew of no other rate for crediting up respondent's work than the one he was guided by, and respondent, though so informed and directed to see the managing officer of the company in respect to the matter, proceeded with his work without doing so or making further complaint, such circumstances were evidentiary in appellant's favor as to the controversy to be solved. To meet that phase of the case it was material to contradict Whitney's evidence and by showing the whole conversation which took place between him and respondent explain the latter's subsequent conduct. The evidence complained of was offered and received wholly for that purpose and not as original evidence to establish the contract price. It was made relevant by the evidence presented by appellant casting discredit on respondent's evidence previously given.

One of the cardinal principles often required to be observed in testing a ruling on evidence is that the method adopted by the adverse party to establish the case in his behalf should be taken into consideration.    Testimony which would be clearly irrelevant or incompetent if offered by one party in the first instance may become very pertinent in rebuttal or explanation of evidence offered by the adversary.  1 Jones, Ev. § 168. Many illustrations of that might be given.  · One is the situation we have here.  The rule applicable to the particular situation may be stated thus: When evidence is introduced by one party tending to raise an unfavorable inference as to the claim of the adverse party, evidence of an explanatory character reasonably tending to rebut such unfavorable inference may be allowed which might in the absence of the adverse evidence be clearly inadmissible.  *Gage v. Chesebro,* 49 Wis. 486, 5 N. W. 881; *Smith v. State,* 51 Wis. 615, 8 N. W. 410 ; *Richmond & D. R. Co. v. Garner,* 91 Ga. 27, 16 S. E. 110, are fair illustrations of this.

Complaint is made because the court refused to allow a statement drawn from appellant's books by the bookkeeper to be received as part of his evidence.  We are unable to see how that was prejudicial, since there was no controversy except as regards the contract rate for the work and it was undisputed that the work was credited up at a sixty-five cent rate and respondent was informed thereof, as heretofore seen.

For the purpose of showing that respondent had notice as early as August, 1903, of appellant's understanding that the work was to be paid for at a sixty-five cent rate, defendant offered in evidence the statement furnished respondent, heretofore referred to, and the offer was rejected.  It seems to be a conclusive answer to the assignment of error on this point that it was undisputed that respondent received notice of appellant's attitude in all respects as it was desired to show by introducing the statement.

The defendant was not permitted to make proof as to the reasonable value per thousand feet for doing the work per-

formed by respondent, nor the reasonable cost thereof. It is claimed that such evidence 'was competent as bearing on the probability of the contract having been made as respondent claimed.

It is not in every case of a dispute as to the contract price for work or material that evidence of the reasonable value is permissible. That seems to be fairly settled by the authorities, as counsel for respondent claim.

The first case here on the subject is *Kvammen v. Meridean M. Co.* 58 Wis. 399, 17 N. W. 22. The controversy was: whether the contract price for operating a portion of a sawmill devoted to the manufacture of lath and shingles was forty cents or twenty-five cents per thousand of the product. It will be noted that the difference between the two contentions was very much larger than in this case, yet the court without definitely deciding the matter inclined to the view that the evidence was properly rejected. Reference was made to *Johnson v. Harder*, 45 Iowa, 677, where somewhat similar evidence was held proper under peculiar circumstances. The difference between the two contentions was very large and the evidence on each side very strong. The court said such evidence "should be admitted with great caution, and limited to its strictly legitimate province." This court held that the controversy in hand did not satisfy the rule stated as well as the one in *Campau v. Moran*, 31 Mich. 280. Some indorsement was given to the doctrine of that case in these words:

"It may be, as intimated by Mr. Justice COOLEY in *Campau v. Moran, supra*, that where the evidence adduced upon both sides is in direct conflict and pretty evenly balanced, as to the contract price, evidence that the cost of performance was greatly in excess of or greatly below such price might afford some reasonable ground for believing that the contract was for the price nearest the cost."

The doctrine thus suggested by Judge COOLEY was subsequently quite consistently applied in several cases by the Michigan court.

The subject seems next to have been presented here in *Valley L. Co. v. Smith,* 71 Wis. 304, 37 N. W. 412. The plaintiff claimed that the, contract was to the effect that defendant should pay it $200 for the use of certain logging camps, and the adverse claim was that plaintiff should have $200 for a good title to the forty-acre tract of land upon which the logging camps were situated. It will be seen that the difference was very great. The court held that evidence of the logging camps, of themselves, being useless to the plaintiff and of no value, was improperly rejected. It will be observed by an examination of the opinion that the great disparity ,between the contentions was the ground of the decision. That will be more clearly seen by examining the decisions cited for support. The rule in *Campau v. Moran, supra,* and some Michigan decisions following it were referred to. *Swain v. Cheney,* 41 N. H. 232, was cited, where the difference between the parties amounted to fifty per cent. *Kidder v. Smith,* 34 Vt. 294, was cited, the difference between the adverse contentions being about seventy-five per cent. In deciding the case the court said:

"Where the disparity between the value of property, and what is claimed to have been the contract price, is small, and within the fair range of what different persons might esteem to be a fair value, such evidence would be very slight, perhaps too slight to be admissible, but when the difference is very great, and beyond the range of fair difference in judgment, it might be entitled to much weight."

*Allison v. Horning,* 22 Ohio St. 138, was also referred to. There the difference between the parties was about ten per cent. The court, apparently with some hesitation, held that it was sufficient to render evidence of the reasonable value admissible. Along the same lines and explanatory of the Michigan authorities is *Short v. Cure,* 100 Mich. 418, 420, 59 N. W. 173, where it was said that such testimony is admissible only in cases where the difference in value is so great as to be

beyond the range of a fair difference in judgment. The mat-
ter there in controversy was not precisely like the one in hand,
but the rule invoked was the one declared in *Campau v. Mo-
ran,* 31 Mich. 280, and subsequently repeatedly applied.

The next instance where the subject was presented here is
in *Bell v. Radford,* 72 Wis. 402, 39 N. W. 482. The differ-
ence between the parties was thirty-three and one-third per
cent. The next instance was in *Mygatt v. Tarbell,* 85 Wis.
457, 467, 55 N. W. 1031. There the difference was very
much larger than in the case before us. The court said with
reference to the agreement testified to, "this was a surprisingly
low price, and under the rule laid down in *Valley L. Co. v.
Smith,* 71 Wis. 304, 37 N. W. 412, and *Bell v. Radford,* 72
Wis. 402, 39 N. W. 482, evidence showing the value . . .
was admissible." Thus it will be seen that the admission of
the evidence was approved because of the "surprisingly low
price" testified to on the one side as that agreed upon.

If we were to attempt to review the authorities elsewhere,
in general, on the question under discussion this opinion would
be extended to a great length without in the end arriving at
a more definite conclusion than can well be reached by relying
on the decisions heretofore made here with the additional
helps to which we have already referred, and the rule to be ob-
served as regards the decision of such a question by the trial
court. It seems that the limitations suggested in *Kvammen
v. Meridean M. Co.* 58 Wis. 399, 17 N. W. 22, have been
adopted as a rule. Such rule leaves the trial court consid-
erable latitude for the exercise of judgment as to when the
facts are such as to render the evidence admissible as matter
of right. The court must necessarily decide the question of
relevancy or competency according to the particular circum-
stances of each case and, as in all such situations, the ruling,
unless clearly wrong and unless prejudicial to the adverse
party, should not be disturbed on appeal. It has often been
decided here that the weight indicated should be given to the

decision of a trial court as to the admission of evidence when it is based on the existence or nonexistence of facts required to have been determined as a basis for the ruling, and that principle is elementary. 1 Jones, Ev. § 170.

To render such evidence as that under consideration admissible in a case of this sort there must be a direct conflict as to the contract price of the thing to which it relates. The difference must be so great that the reasonable value thereof *from the standpoint of the parties when the contract was made may reasonably discredit the evidence on the one side and corroborate that on the other, affording some* reasonable ground for believing that the contract was at the *price most in harmony with such evidence.* No guide is at hand in our decisions as to the difference between the adverse claims requisite to satisfy the call for a large difference, but in no case has it been nearly so small as in the instance in hand.

When the trial court was called to make the ruling complained of the evidence was undisputed that at the time of the negotiations leading up to the making of the contract, if one were made, appellant offered respondent sixty-five cents per thousand feet for such work and respondent demanded, or said he ought to have, seventy cents, claiming that during the previous season he lost money doing similar work for appellant at the rate offered. The difference between the parties was about eight per cent. and that was asked in view of the experience of the season before. True, such difference when applied to nearly a year's work and the handling of over 19,000,000 feet of lumber made a considerable sum, but since, as appears, some twelve fourteenths of the asked compensation was required to pay the expenses, and appellant must have had in contemplation all the interferences liable to arise during the progress of the work, it is difficult to conclude the trial court was clearly wrong in holding that the difference was not very great, within the meaning of the rule. We come to this conclusion viewing the situation as it was when the parties

conducted their negotiations, not as one might view the work after its completion, in determining its reasonable cost.

It is of considerable and perhaps controlling importance that the direct question as to cost and reasonable value did not go to the value of the work, as the parties must have contemplated it at the time of their negotiations, but to the reasonable value, with all uncertainties which existed at the time of the negotiations eliminated. In *Bell v. Radford,* 72 Wis. 402, 39 N. W. 482, the evidence went to the reasonable value of the subject of the transaction at the time the trade was made, and the same is true as we understand it, in *Mygatt v. Tarbell,* 85 Wis. 457, 55 N. W. 1031, and *Valley L. Co. v. Smith,* 71 Wis. 304, 37 N. W. 412, which seems to be the logical basis for allowing such evidence. This was the main question ruled on: What was the reasonable value of sorting, piling, and doing the work specified, which *Mr. Anderson* did during the season of 1902 and 1903, per thousand, or what was its reasonable value during the sawing season of 1903? In *Shakespeare v. Baughman,* 113 Mich. 551, 71 N. W. 874, evidence of the reasonable value of work actually done in performance of a contract, to discredit the testimony of a party as to the price agreed upon before performance commenced, was held improper and the judgment was reversed because of its admission, the court saying:

"Evidence of the value of the services contemplated, taking consideration of the contingencies, rather than those actually found necessary, would bear upon the question, the latter being likely to throw very little, if any, light upon it."

In that case the limitations upon the admissibility of such evidence, which we have suggested, were fully recognized.

Complaint is made because the court refused to permit appellant to introduce in evidence respondent's statement of his extra work differing from one previously made. That seems sufficiently answered by the circumstance that the offer was made only to explain why the proper credit had not been

given, and by appellant's request for instructions it is seen that the amount was not in controversy at the close of the trial.

There was a motion for a nonsuit and a motion in appellant's favor for a verdict. Both were grounded on the theory that the evidence did not warrant a finding that there was an agreed price for the work. It is considered that the motions were properly denied because the answer admitted that there was such a price, but alleged it was sixty-five cents per thousand feet. Moreover, we cannot agree that there was no evidence worthy of belief, showing that the work was done for a stipulated price. Respondent testified that at the time of the negotiations in respect to the work he said to McMillan, the person representing the company, that if he handled the lumber by the thousand he wanted a seventy-cent rate, and did not want to do the work at all by the thousand if a certain person mentioned was to be the scaler. Whereupon he was directed to write for a scaler, hire his crew and do the work, and that without further negotiations he did so. The evidence in that regard was contradicted and there were circumstances corroborating and discrediting it, but, on the whole, it was fairly within the province of a jury to believe it. It is not contended, as we understand it, but what, if the circumstances were as respondent claimed, a contract was made at a seventy-cent rate. The fact that the work was done from first to last as it would necessarily have been in case of there being a contract price, respondent being credited with his work and charged with all the expenses, accordingly, as he rendered accounts and requested payment, no question being raised as to whether they were proper or not, was a most persuasive circumstance in favor of the contract theory. There was some explanation of that, it is true, but none of controlling significance, especially in view of the admission in the answer that the work was done at a contract price.

The court refused to instruct the jury, as requested, that the evidence of what Whitney said as to respondent being

paid at a seventy-cent rate at the end of the season, if true, was not evidentiary of a contract to pay for the work at that rate, but did say to the jury, "You will remember that the right to recover at the rate of seventy cents must depend upon the bargain made with McMillan. There is no evidence of any contract made at a later date with any other officer of the defendant company at that rate. As stated by counsel, the bookkeeper is not shown to have had any authority to make a contract for the piling;" and during the argument to the jury the court said, in ruling on an objection by counsel for appellant to the argument of counsel for respondent, that the former should omit mentioning, as evidence to be considered, that of respondent as to Whitney's telling him how his account would stand if his work was credited at a seventy-cent rate, and doing so as if he had theretofore figured the matter up. On the whole, it seems that the jury were instructed sufficiently favorably to the appellant on the subject covered by the request refused. Whitney's evidence that he credited up the work at a sixty-five cent rate and did not know of any other was introduced by appellant to establish an evidentiary circumstance tending to prove that such was the contract rate. That rendered the statement complained of, if he made such, an evidentiary circumstance of the same character. Though Whitney had no right to make a contract in respect to the matter, as the jury were expressly instructed by request, his situation was such that there was a strong probability of his having knowledge of the contract rate. That was necessary to the performance of his duties. Therefore, upon appellant's presenting his evidence as circumstantially establishing its claim, it was proper to meet it as was done, and to let the whole matter go to the jury with the admonition the court gave and the instruction that whether a contract was made and its character depended wholly on what occurred between respondent and McMillan.

It is claimed that the court submitted the case to the jury

upon the theory that a contract to do the work at a stipulated rate per thousand feet was made and that it was for them to determine from the evidence what that rate was.   We are inclined to think the case might well have been submitted in that way, since it would have been in harmony with the pleadings and there was evidence on both sides in like harmony, but as we understand the instructions the case was not so submitted.   The jury were told that unless they came to the conclusion to a reasonable certainty from the preponderance of the evidence that the minds of the parties met as to making a contract, and all the terms thereof, they should find for the defendant as to plaintiff's claim in that regard, and that the burden of proof in respect to whether there was a contract and whether it was as claimed by plaintiff was on the latter.   That together with other instructions left it to the jury to say not only whether there was a contract to pile the lumber at a stipulated price per thousand feet, but, if so, whether it was as claimed by respondent, and correctly placed the burden of proof.

It is suggested the court should have directed the jury that if they believed respondent's version of what occurred in the negotiations with McMillan was true the finding should be in his favor, and if they believed from the evidence the version contended for on the other side was true the finding should be for appellant.   It may be that such a submission, coupled with proper instructions as to the burden of proof in respect to the matter, would have been permissible, but as we understand the charge the court adopted a course less favorable to respondent. We may well say in passing that the argument at this point seems to concede that the only controversy was one as to the contract price.   Certainly if there was one as to whether a contract was made or not, the court could not well have submitted the case as suggested.

It does not seem that the court left it to the jury, as claimed, to construe the contract, but left it to them, as indicated, to

determine from what they found from the evidence to have occurred, whether a contract was in fact made and the terms of it. The situation was such, that whether the minds of the parties really met in the contractual sense, and, if so, the precise points of meeting, were matters of fact to be determined not only from what was said but from the conduct of the parties at the time of the negotiations and subsequently thereto.

Lastly, complaint is made because the court refused to set aside the verdict and grant a new trial upon the ground, among others, of newly-discovered evidence. Such evidence was that of one person to the effect that respondent admitted to him no contract was made before the work of piling the lumber was commenced, and that some time thereafter it was agreed that he should do the work on a guaranteed wage basis of $2.50 per day, and as much more as he could make at a sixty-five cent rate. That was contradictory of the claim in the answer and corroborative of evidence on the part of appellant. It was not, strictly speaking, cumulative, as claimed by respondent's counsel. Additional evidence on the same point is not cumulative if it is of a different kind. To illustrate, evidence of admissions by a party as to the nature of a transaction between him and another is not cumulative as to evidence of such party in respect to such transaction. It is a mistake to characterize evidence on a particular point as cumulative merely because evidence has been introduced bearing on the same point. When there is a dissimilarity in the kind of evidence the last is not cumulative to the first. Sometimes it is said generally that additional evidence tending to prove the facts in relation to which evidence has been adduced is cumulative, but that is not necessarily so. *Andersen v. State,* 43 Conn. 514, 519; *Hines v. Driver,* 100 Ind. 315, 327; *Winfield Bldg. & L. Asso. v. McMullen,* 59 Kan. 493, 53 Pac. 481; *Grogan v. C. & O. R. Co.* 39 W. Va. 415, 421, 19 S. E. 563; *Marshall v. Mathers,* 103 Ind. 458, 3 N. E. 120.

However, since the new evidence was met by the positive

denial of respondent and was of a character not ordinarily en-
titled to much weight, being what is called the weakest kind
of testimony (*Dreher v. Fitchburg*, 22 Wis. 675), we cannot
well say that the motion for a new trial was improperly de-
nied, if grounded, alone, upon the theory that had the testi-
mony of the witness been produced upon the trial the result
would probably have been the same. The trial court in pass-
ing on such a matter has broad discretion, and only for abuse
of it can the result reached be disturbed on appeal. Such dis-
cretion should not be exercised in favor of a retrial without
some pretty substantial ground for believing that with the aid
of the new discovery the scales of justice may probably incline
the other way. *Goldsworthy v. Linden,* 75 Wis. 24, 43 N. W.
656; *Kennedy v. Plank,* 120 Wis. 197, 97 N. W. 895.

There are a few questions discussed in the briefs of counsel
which we have not referred to, but they are of such a minor
character that they may well be passed without special notice.

' *By the Court.*—The judgment is affirmed.

TIMLIN, J., took no part.