BRUST and another, Appellants, vs. FIRST NATIONAL BANK OF STEVENS POINT, Respondent.

*April 10—May 6, 1924.*

*National banks: Actions against: Venue: Civil court of Milwaukee county: Change of venue: On appeal: Constitutional law: Uniform judicial procedure: Equal protection of the laws: Architects: Contracts of employment: Waiver of provisions as to cost of building: Trial: Uncontradicted expert testimony.*

1. The civil court of Milwaukee county might acquire jurisdiction of an action commenced against a national bank located outside of Milwaukee county, as sec. 4, ch. 290, of the act of Congress of July 12, 1882, repealed conflicting provisions of sec. 5198, R. S. of U. S., and placed national banks on an equal footing with state banks so far as the jurisdiction of suits by or against them is concerned.  p. 19.

2. Under the civil court act for Milwaukee county (sub. 3*a*, sec. 28, ch. 261, Laws 1913), the civil court had no power to grant the application of the defendant national bank for a change of venue, but on appeal to the circuit court the latter had power if the defendant was entitled to such change.  p. 20.

3. A national bank differs from a foreign corporation, which may not do business in the state without its permission and without complying with the laws upon which such condition is made dependent; and the state is without power to prohibit a national bank from, or to embarrass it in, existing in the state or doing business therein.  p. 21.

4. On the appeal of the defendant national bank from a judgment of the civil court of Milwaukee county, the circuit court properly granted the application of the bank for a change of venue to the county of its domicile, under sub. 3*a*, sec. 28, of the civil court act and sub. 7, sec. 2619, Stats., the bank not being a corporation existing under the laws of the state within sub. 6 of sec. 2619.   p. 22.

5. Where the record disclosed that the defendant was a national bank, and since the only proper place of trial of an action against a national bank is in the county in which the bank is located, an application for a change of venue which states that the county of Portage, the place of defendant's domicile, was the proper county for place of trial, is sufficient. p. 22.

6. The civil court act for Milwaukee county, relating to a change of the place of trial of actions commenced in the civil court and to the disposition which the circuit court may make of appeals to that court, and providing that where a change of the place of trial is granted a nonresident defendant by that court on appeal a new trial shall be had in the proper county, affects alike as a class all those coming within its provisions, and is not violative of amendm. XIV, Const. U. S., and secs. 1 and 9, art. I, Const. Wis.   p. 23.

7. A bank which employed architects to prepare plans for a new building to cost not more than $85,000 is *held* to have waived a breach of the agreement as to the cost of the building by conduct (detailed in the opinion) inconsistent with the idea that if there was a breach the bank intended to insist on it. p. 25.

8. The reasonable value of the services rendered by the plaintiffs for defendant is a matter to be established by expert testimony.  p. 26.

9. A jury has no more right to ignore the uncontradicted testimony of experts than it has to ignore uncontradicted testimony relating to any other subject.   p. 26.

APPEAL from a judgment of the circuit court for Portage county: BYRON B. PARK, Circuit Judge. *Reversed.*

This action was brought by plaintiffs against the defendant to recover the value of services rendered by them in their professional capacity as architects. The plaintiffs were employed by the defendant to prepare plans for a new bank building. It was claimed on the part of the defendant that it was understood that the bank building was to cost not more than $85,000, and that the plaintiffs warranted to

the bank that the building, the plans for which were furnished by the plaintiffs, could be built for $85,000. The jury so found upon conflicting testimony and further found that the defendant relied upon said representations. The lowest bid made in response to a public advertisement for bids for the construction of the building in accordance with the plans and specifications was very much in excess of $85,000. Upon the coming in of the bids the bank concluded that it would not go ahead with the building, and asked the plaintiffs to send it a bill for their expenses. The plaintiffs sent a bill for $3,000, to cover not only their expenses but their reasonable charges for services rendered. The defendant paid no attention to this bill for over a year, when it reconsidered the matter of building, entered into new negotiations with the plaintiffs, paid them $2,000 on account, arranged for a modification of the plans so as to reduce the expense of the building, and re-advertised for bids. The bids received in response to this re-advertising were much higher than the bids received in response to the first advertising, and the bank thereupon rejected plaintiff's plans and procured other architects.

This action was brought on *quantum meruit,* and the court submitted this question to the jury, among others: "If the court should be of the opinion that the plaintiffs are entitled to recover in this action, what sum, if any, is due the plaintiffs for services rendered?" The jury answered $800. The plaintiffs moved to change this answer from $800 to $1,842, the same being the amount of the plaintiffs' bill. The defendant moved for judgment in its favor dismissing plaintiffs' complaint with costs. The motion of the plaintiffs to change the answer as above indicated was denied, and the defendant's motion for judgment dismissing the complaint was granted. The plaintiffs appeal from the judgment so entered.

For the appellants there was a brief by *Kaumheimer & Kenney* of Milwaukee, and oral argument by *R. I. Kenney.*

For the respondent there was a brief by *J. R. Pfiffner* and

*Fisher & Cashin,* all of Stevens Point, attorneys, and *F. F. Wheeler* of Milwaukee, of counsel, and oral argument by *Mr. Pfiffner, Mr. W. E. Fisher,* and *Mr. Wheeler.*

OWEN, J.   The plaintiffs raise numerous questions concerning the jurisdiction and the proper place of trial of the action, which will first be disposed of.   The case was commenced in the civil court of Milwaukee county.   The defendant made an application to that court for change of venue to Portage county, claiming that as the defendant bank was domiciled in the city of Stevens Point, in that county, that was the proper place of trial.   This application was denied by the civil court for the reason that no statutory provision authorizes a change of venue from the civil court of Milwaukee county.   The defendant then defaulted, and judgment was rendered in favor of the plaintiffs in said civil court.   Thereupon the defendant appealed to the circuit court, where its application for a change of the place of trial was renewed.   The circuit court granted the application and made an order transferring the case to the circuit court for Portage county, where a trial *de novo* was had, with the result already stated.   It seems proper that we first consider whether the civil court of Milwaukee county had any jurisdiction of the case.

Sec. 5198 of the Revised Statutes of the United States, as amended by ch. 80, approved February 18, 1875, provides that "Suits, actions, and proceedings against any association under this title may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established, or in any state, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."   Sec. 4 of ch. 290 of the act of Congress approved July 12, 1882, entitled "An act to enable national banking associations to extend their corporate existence, and

Brust v. First Nat. Bank, 184 Wis. 15.

for other purposes," provides, so far as material here, as follows:

"The jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized under any law of the United States which do or might do banking business where such national banking associations may be doing business when such suits may be begun. And all laws and parts of laws of the United States inconsistent with this proviso be, and the same are hereby, repealed."

This provision appears in the Compiled Statutes of the United States as sec. 9668.

It is the contention of the defendant bank that the jurisdiction of state courts to entertain suits against national banks is defined by sec. 5198 of the Revised Statutes, above quoted, and that, by the terms of that section, only state courts located within the municipality or county in which the national bank is located may entertain jurisdiction of a suit against a national bank. The plaintiffs contend that the act of 1882 is applicable, and that under the provisions of that act any state court which would have jurisdiction of an action against a state bank similarly situated may entertain jurisdiction against a national bank. That the latter contention is correct seems to us quite clear. The act of 1882 is a later enactment than sec. 5198. It seems to cover the subject of jurisdiction of state courts in actions against national banks, and expressly provides that all laws and parts of laws inconsistent therewith are repealed. It seems to have been the policy of Congress to place state and national banks on an equal footing in this respect. Such was the conclusion of the Michigan court in *Levitan v. Houghton Nat. Bank,* 174 Mich. 566, 140 N. W. 1019. While we are referred to no case decided by the federal

supreme court involving the question, we are referred to the cases of *First Nat. Bank v. Fellows,* 244 U. S. 416, 37 Sup. Ct. 734, and *First Nat. Bank v. Missouri,* 263 U. S. 640, 44 Sup. Ct. 213, in both of which original jurisdiction was taken by the respective state supreme courts, and no question of the jurisdiction seems to have been raised. It is manifest that if the terms of sec. 5198 governed the question of the jurisdiction of state courts over actions against national banks, the question of jurisdiction would have arisen, as neither supreme court was a court of the county in which the bank was located. As the civil court of Milwaukee county could take jurisdiction of an action against a state bank located in Portage county, it follows very plainly, it seems to us, that it might also acquire jurisdiction of a national bank located in that county. We therefore hold that the civil court of Milwaukee county had jurisdiction.

The civil court act for Milwaukee county makes no provision for a change of venue from that court to another county where the defendants are nonresidents of Milwaukee county. Sub. 3a of sec. 28 of that act (ch. 261, Laws 1913) provides that on any appeal from said civil court to the circuit court of Milwaukee county, nonresident defendants may make application for a change of the place of trial in like manner and for like causes as in cases originally brought in the circuit court, and as provided in like cases on appeal from justice's court by sec. 2624 of the Statutes, and upon such change of venue the circuit court of the county where the defendant resides shall have jurisdiction of such action, the same as on appeal from justice's court, and there shall be a trial *de novo* in the same cases and under the same provisions of law as in the cases of appeals from justice's court. It follows that the civil court had no power to grant defendant's application for a change of the place of trial, but that the circuit court did have the power to do so if defendant was entitled to a change of the place of trial under the provisions of our statutes relating to that subject.

Whether it had such right must be determined by the provisions of sec. 2619, Stats. Such right on the part of the defendant must be determined by a consideration of the sixth and seventh subdivisions of that section. The first three subdivisions of that section provide for the place of trial of various actions therein enumerated. The fourth subdivision relates to actions against railroads and interurban railroads. The fifth relates to actions against insurance companies. The sixth subdivision is as follows: "Of an action against any other corporation existing under the law of this state, the county in which it is situated or has its principal office or place of business, or in which the cause of action or some part thereof arose." And the seventh subdivision provides: "Of any other action, the county in which any defendant resides at the commencement of the action; or if neither defendant resides within this state, any county which the plaintiff designates in his complaint."

If a national bank can be said to be a corporation "existing under the laws of this state," then the change of the place of trial was improperly granted, as the cause of action arose in Milwaukee county. Appellants contend that a national bank does exist under the laws of the state of Wisconsin, relying upon our decision in *State ex rel. Wis. Dry Milk Co. v. Circuit Court,* 176 Wis. 198, 186 N. W. 732, where it was held that a foreign corporation licensed to do business in this state "existed" under the laws of this state. It seems obvious that there is a wide distinction between a national bank doing business in this state and a foreign corporation licensed under our laws to do business in this state. The existence of a national bank within our borders is in no sense dependent upon our state laws. It is quite different with a foreign corporation. The latter may not do business here without securing the permission of the state and complying with the laws upon which such condition is made dependent. True, a national bank may be amenable as a citizen to certain laws of this state, the same as any indi-

vidual or corporation domiciled here, but it does not "exist" here by virtue of the laws of this state. It is beyond the power of the state to prohibit it from, or to embarrass it in, existing in this state, or doing business in this state, even if it would. It cannot be said that a national bank exists under the laws of this state, for which reason it must be that its right to a change of the place of trial from Milwaukee to Portage county is ruled by the seventh and not the sixth subdivision of sec. 2619. It follows, therefore, that the change of the place of trial was properly granted by the circuit court for Milwaukee county.

The application for a change of the place of trial demanded "that the trial of this action be had within the proper county, to wit, the county of Portage, for the reason that the defendant at the time of the commencement of this action resided, and still resides, in the city of Stevens Point, in the said county of Portage, in the state of Wisconsin." It is said that this application was deficient under the rule of *Anderson v. Arpin H. L. Co.* 131 Wis. 34, 110 N. W. 788, because it did not disclose all the counties which were proper counties for the trial of the action. This contention is quite effectually answered by our conclusion that the only proper place of trial for the action was in the county in which the defendant resided. The record fully disclosed the fact that the defendant was a national bank, and as the proper place of trial of actions against national banks is in the county in which the national bank is located, the application did disclose the only proper place of trial. This contention, therefore, cannot be entertained.

It is further contended that the provisions of the civil court act, to which we have already referred, relating to a change of the place of trial of actions commenced in that court, is unconstitutional, in that it deprives the plaintiffs of the equal protection of the laws, and violates (a) the Fourteenth amendment of the United States constitution; (b) art. I, sec. 1, and (c) art. I, sec. 9, of the Wisconsin

constitution.   This conclusion on the part of appellants is rested upon the various provisions of the civil court act, but principally the one relating to the disposition which the circuit court of Milwaukee county may make of appeals from the civil court of that county.   Under the provisions of the civil court act the circuit court is authorized to order a new trial in the circuit court only where substantial justice cannot otherwise be done.   It will be noted that, where a change of the place of trial is granted a nonresident defendant, a new trial shall be had in the proper county.   It is argued that this provision accords to nonresident defendants rights on appeal which are denied to the plaintiffs, and also rights which are denied to defendants resident of Milwaukee county.   This is completely answered by the provisions of our statutes fixing the proper place of trial.   This action was commenced in Milwaukee county, in defiance of the statutory provisions relating to the proper place of trial.   In thus ignoring the statutory provisions in commencing the action in an improper county, plaintiffs submitted themselves to the procedure prescribed by the legislature under such circumstances, and the contention that the procedure thus laid down operates to deny the plaintiffs the equal protection of the laws has a most shadowy foundation.   It is a counterpart of the procedure that has always existed in this state relative to a change of venue in cases commenced in justice's court.   There is far greater reason for saying that a nonresident defendant is denied the equal protection of the laws since he is compelled to await the judgment of the civil court and then an appeal to the circuit court before he can insist upon his right to a change of venue.   This is a matter of procedure within the legislative field, and if the procedure devised affects all similarly situated alike, there is no basis for the contention that any one is denied the equal protection of the laws.   Under this provision all nonresident defendants against whom actions are improperly brought in the civil court of Milwaukee county are treated

alike. All plaintiffs who improperly bring suits against non-resident defendants in Milwaukee county are treated alike. This is so plain that it does not merit extended notice.

We now come to a consideration of the merits of the action. The verdict of the jury established the fact that the plaintiffs agreed that the building could be built for $85,000. It is conceded that there is evidence to support this finding of the jury and that it must be regarded as a verity on this appeal. It is insisted, however, by the appellants that if there was a breach of this agreement on their part it was waived by the defendant, and with this contention we are compelled to agree. The plaintiffs were employed in April. They submitted their finished plans in July. Bids for the construction of the building were opened August 2, 1918. The lowest bid was $114,525. Thereupon the directors of the bank adopted this motion:

"On motion it was decided that on account of the bids running so high, and adding to this the cost of the site, $18,500, the architects' fees of seven per cent. on the total cost of the building; the high cost and the difficulty of securing labor and the uncertainty of getting materials, the erection of our new building be postponed until after the war, or until such time as conditions would warrant."

Sometime in August the bank wrote plaintiffs asking them to send the bank a statement of their expense. Plaintiffs responded with a bill for $3,000. The bank paid no attention to this bill for upwards of a year. This was in 1918. On October 8, 1919, *Mr. Philipp,* one of the plaintiffs, was called to Stevens Point for the purpose of talking over with the directors of the bank the matter of obtaining new bids. Some changes in the plans and specifications were made which it was thought would reduce the cost of the building. On this date the bank paid *Philipp* $2,000 on account. New bids were called for. The new bids were opened at a meeting of the board of directors on December 18, 1919. The lowest bid for the construction of the

building amounted to $136,362.82. On January 2d, following, the board of directors adopted the following resolution:

"Because of the excessive cost of the building, as per plans of Brust & Philipp, architects, the same far exceeding the cost as represented by them at the time they were employed, and also the amount we can legally expend for such building, we do reject such plans as a whole."

Thereafter the bank employed Chicago architects and informed Brust & Philipp that their services were no longer required. Plaintiffs then presented a bill for $1,834, in addition to the payment of $2,000 which was made on October 8th.

It is claimed that if there was any breach of the contract it occurred at the time the first bids were opened. There is no evidence whatever to indicate that the directors of the bank considered that there was a breach at that time. They did not reject the plans. They did not dismiss the architects. They simply postponed the consideration of the construction of the new building until a later time when it was thought the cost of construction might be less. They asked the plaintiffs to send them a statement of their expense, and over a year later they again called them into consultation, arranged for a change in the plans, and advertised for new bids. This conduct is all inconsistent with the idea that if there was a breach the bank intended to insist upon it. In our judgment it amounted to a plain waiver of the breach, if there was a breach, and it cannot be insisted upon as a defense to this action. It follows that plaintiffs are entitled to the reasonable value of their services. Upon this question there is no evidence in the record to support the finding of the jury fixing it at $2,800. The plaintiffs called three competent and well known architects of Milwaukee to testify to the value of the services they rendered. None of them fixed it below $4,000. Defendant called one architect who testified that the ordinary charge of architects

for the services rendered was three per cent. of the cost of the building as shown by the second bids. Upon this basis the services rendered were of the value of $3,990.

The plaintiffs' claim was for $3,834, which was less than the value fixed for their services by any architect who testified. The reasonable value of the services rendered by plaintiffs was a matter to be established by expert testimony. The jury has no more right to ignore the uncontradicted testimony of those qualified to testify upon this subject than they have a right to ignore uncontradicted testimony relating to any other subject. *Krueger v. Chase,* 172 Wis. 163, 177 N. W. 510; *Tullgren v. Karger,* 173 Wis. 288, 181 N. W. 232; *Holsapple v. Scofield,* 176 Wis. 649, 187 N. W. 682; *Estate of Butt,* 181 Wis. 141, 193 N. W. 988. As the uncontradicted testimony shows that the reasonable value of the services rendered by the plaintiffs is more than the amount claimed, judgment should be rendered for the amount claimed in the complaint.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment in favor of the plaintiffs and against the defendant for the amount claimed in their complaint.