## EVO DeCOCK v. R. A. O'CONNELL AND OTHERS.[1]

No. 29,064.

February 17, 1933.

[1]Reported in 246 N. W. 885, 248 N. W. 829.

*Ueland & Ueland,* for appellant.

*A. R. English* and *Clarence J. Donnelly,* for respondent.

LORING, JUSTICE.

This was a suit brought and tried in Lyon county for the conversion of the proceeds of a check. The plaintiff had a verdict. The defendant Midland National Bank & Trust Company of Minneapolis moved for judgment notwithstanding the verdict or a new trial. The motion was denied, and a judgment was entered for the plaintiff. The company has appealed.

The plaintiff, through the defendant R. A. O'Connell, sought and obtained a loan for $6,000 upon his farm. The mortgage ran to the Metropolitan Life Insurance Company. Two hundred and fifty dollars was held back by the mortgagee until certain improvements were made on the mortgaged premises. The Union Mortgage Company, with which the mortgage was negotiated, drew its check in the sum of $5,750, payable to the order of plaintiff and drawn upon this appellant. The check was mailed to O'Connell. O'Connell forged the plaintiff's name to the indorsement of this check, deposited the check to his own credit in the defendant Lyon County National Bank, which indorsed the check to the National Citizens Bank of Mankato, which in turn indorsed it to the Merchants National Bank of St. Paul, which collected the amount of the check from the appellant. The appellant charged the check to the account of the Union Mortgage Company and returned it with other canceled vouchers with its monthly statement to the mortgage company. The mortgage was negotiated in August, 1926, and the check reached the appellant September 24, 1926. O'Connell led the plaintiff to believe that the mortgage negotiations had not been successful, but eventually the plaintiff discovered that O'Connell had converted the proceeds of the check to his own use.

March 27, 1928, plaintiff entered into an agreement with R. A. O'Connell and Blanche E. O'Connell, his wife, whereby the O'Con-

nells, reciting that they were indebted to plaintiff in the sum of $5,500 with interest from September 1, 1926, agreed that they would pay that sum to the plaintiff in instalments, $250 at the execution of the instrument, $50 a month during the first year, and thereafter at the rate of $100 a month until the entire amount was paid, with interest at the rate of eight per cent per annum. To secure the payment of the sum agreed upon the O'Connells were to assign to the plaintiff an insurance policy upon which it was claimed that the premiums were paid by certain renewal commissions due from the insurance company to O'Connell. Although the contract was carelessly drawn, apparently the O'Connells were also to pay the interest on the mortgage loan as it came due and receive credit therefor. The instrument then provided:

"And the party of the second part [plaintiff] herewith and hereby agrees to accept the said security and the said premiums in full payment and satisfaction of the money so loaned him as above stated, to-wit, the sum of $5,500 with interest from Sept. 1, 1926."

O'Connell subsequently paid to the plaintiff $1,525 in instalments and paid $390 interest on the mortgage. He then defaulted, and in March, 1931, the appellant was advised that the indorsement on the check was a forgery. This action was brought in September of that year.

The appellant appeared specially and moved to set aside the service of the summons on the ground that under the federal statutes it could be sued only in Hennepin county. The motion was denied, and the appellant then demurred to the complaint on the ground that there was an improper joinder of causes of action and on the further ground that no cause of action was stated. The demurrer was overruled. The appellant answered. The plaintiff replied, and the case came to trial before a jury, which returned a verdict for the plaintiff in the sum of $5,407.13.

The appellant attacks the judgment on six grounds:

(1) That the Lyon county district court had no jurisdiction over the appellant on account of the provisions of the national bank act.

(2) That there was a misjoinder of causes of action.

(3) That the complaint failed to state a cause of action against the appellant.

(4) That the plaintiff lost his cause of action against the appellant by the agreement with the O'Connells under date of March 27, 1928, above referred to.

(5) Error in the instructions of the court in regard to the amount paid by the O'Connells to plaintiff.

(6) Error of the court in refusing to charge the jury on the subject of laches.

1. 12 USCA, § 94, was enacted by congress in 1875 and reads as follows:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases."

A later statute, which now appears as 28 USCA, § 41(16), after providing that the district court of the United States shall have jurisdiction of certain classes of cases in which national banking associations or their receivers are involved, provides:

"And all national banking associations established under the laws of the United States shall, for the purposes of all other actions by or against them, real, personal, or mixed, and all suits in equity, be deemed citizens of the States in which they are respectively located."

The questions here presented are whether or not congress by the later statute intended to abolish any limitations upon the venue in state courts which may have been intended to be imposed by the earlier statute, and whether national banks are now subjected to the same provisions of the state law in that regard as are state banks or other domestic corporations. This problem was before the supreme court of Michigan in the case of Levitan v. Houghton Nat. Bank, 174 Mich. 566, 140 N. W. 1019, 1023. That court decided

adversely to the appellant's contention here. Referring to the later provision of the statute it said [174 Mich. 574]:

"Obviously the purpose of the law is to limit the jurisdiction of the United States courts and do away with the limitations of venue imposed by the earlier statutes on the state courts."

Our own views are in accord with those expressed by the supreme court of Michigan, and we believe that it was the purpose of congress to permit suits to be brought against national banking associations as if they were organized under the state law in so far as actions over which state courts have jurisdiction are concerned, and that matters of venue within the state are to be controlled as if national banking associations were in fact citizens of the state. We find no incompatibility between this interpretation of the law and the holding of the United States Supreme Court in Van Reed v. Peoples Nat. Bank, 198 U. S. 554, 25 S. Ct. 775, 49 L. ed. 1161, 3 Ann. Cas. 1154, that no attachment may issue against a national banking association by reason of the provisions of 12 USCA, § 91. In our opinion congress merely elected to retain control over such suits to the extent of preventing attachments against such associations. It might very well do this while subjecting them to state provisions in regard to venue. See also First Carolina J. S. L. Bank v. New York T. & M. Co. (D. C.) 59 F. (2d) 350.

■ The appellant contends that each of the defendants committed a separate and complete tort in the process of cashing the check on the forged indorsement and that the alleged successive causes are therefore misjoined in one action. With this contention we cannot agree. Where a single injury is suffered as a consequence of the wrongful acts of several persons, all who contribute directly to cause the injury are jointly or severally liable although there was no conspiracy or joint concert of action between them. 6 Dunnell, Minn. Dig. (2 ed. & Supp.) § 9643; Virtue v. Creamery P. M. Co. 123 Minn. 17, 142 N. W. 930, 1136, L. R. A. 1915B, 1179, 1195; Twitchell v. Glenwood-Inglewood Co. 131 Minn. 375, 155 N. W. 621. In our view the whole process from the forgery of the indorsement to the final cashing of the check constituted the conversion,

and each party who performed any essential step in the process might be joined as a defendant in an action in tort. The acts of each defendant, although separately committed, tended to the same end, namely, the taking of money from the respondent by the means of a forged indorsement and the wrongful delivery thereof to O'Connell. The appellant relies upon the case of Northern Finance Corp. v. Midwest Commercial Credit Co. — S. D. —, 239 N. W. 242. That case is clearly distinguishable from the one at bar for the reason that there were successive and separately complete conversions of an automobile, and the court held there was no community of wrongdoing.

What we have said in discussing the alleged misjoinder disposes of the claim that no cause of action is alleged or proved against this appellant. Moler v. State Bank, 176 Minn. 449, 223 N. W. 780, 62 A. L. R. 799; Good Roads Machinery Co. v. Broadway Bank (Mo. App.) 267 S. W. 40; 14 A. L. R. 764-767; Independent O. M. Assn. v. Fort Dearborn Nat. Bank, 311 Ill. 278, 142 N. E. 458; Burstein v. Peoples Trust Co. 143 App. Div. 165, 127 N. Y. S. 1092; Standard S. S. Co. v. Corn Exchange Bank, 220 N. Y. 478, 116 N. E. 386, L. R. A. 1918B, 575; Burdick, Torts (4 ed.) § 362, at p. 418.

■ We come to the consideration of the claimed release of O'Connell by the alleged contract between him and his wife on the one hand and DeCock on the other. If DeCock waived the tort now sued upon and by this agreement substituted a contract of compromise and settlement for the tort liability, he thereby released one of the joint tortfeasors, and no recovery may be had against this appellant for the alleged conversion. The court charged the jury that the contract, if it took effect, released the appellant, but it left to them the question whether it was ever effectively delivered. Does the evidence leave this question open, or is it conclusive that delivery was made and the contract effective?

DeCock took the position at first that there was but one instrument evidencing the contract and that he had kept that in his own possession pending delivery of the insurance policy referred to therein. His counsel claimed that the contract was not to take

effect until the policy was turned over to DeCock. However, in the trial it developed by DeCock's testimony that the contract was executed in triplicate, signed by the two O'Connells and DeCock, that DeCock kept one instrument, and that the others were at that time turned over to O'Connell and his lawyer. Not only were the instruments delivered, but DeCock frankly admitted the receipt of $1,525 from the O'Connells, paid, as he said, "under the contract." It is also undisputed that the O'Connells paid $390 of interest on the loan as provided by the contract. (The contract recites that the second party [DeCock] "shall pay the interest obtained for them by the said party of the second part as such interest becomes due, such to be applied on the principal.") It is quite obvious that the contract was intended to provide that the O'Connells should pay and be credited for the interest on the mortgage on DeCock's farm. It was so interpreted by the parties, for the O'Connells did so pay it in the sum of $390. This is undisputed.

In our opinion DeCock waived the delivery of the policy and accepted part performance under the contract. The instrument went into effect as a contract obligation compromising and settling the tort liability, notwithstanding its provisions as to the insurance policy.

"Conduct on the part of the party for whose benefit the condition is inserted, which induces the adversary party to believe that such condition will not be insisted upon * * * is ordinarily said to amount to a waiver of such condition. A breach of a condition is said to be waived by the act of the party for whose benefit such condition was reserved in continuing to accept benefits under the contract." Page, Contracts, § 2660, and cases cited.

We deem the record conclusive against plaintiff. Here was a tort liability, not a contract obligation. Superseding the tort liability by a contract necessarily waives the tort and releases the tortfeasor. Such a result more clearly follows when tort liability is succeeded by contract obligation than where there is a compromise and settlement of a contract obligation or indebtedness. Here the instrument first turned the liability into an obligation by reciting

an "indebtedness," then provided for the manner of its payment and how such payment should be secured. Performance in part in full recognition of the contract obligation then followed. The tort liability cannot be revived. Perhaps the principles by which we arrive at this conclusion would be clearer if we should assume that the property converted by O'Connell had been not money but some specific personal property such as an automobile. Had O'Connell joined with the others in converting plaintiff's automobile and had the plaintiff, upon discovery of the tort, settled with O'Connell by taking from him a contract obligation to pay an agreed price, no one would hesitate to say that the tort was waived and was superseded by the express contract as much as if he had recovered judgment in a suit based on an implied contract. The plaintiff would have elected, and in part have obtained his remedy, and one entirely inconsistent with the tort liability, the more so where, as here, plaintiff by the contract obtained the obligation of an entire stranger to the tort (Blanche O'Connell) and collected or benefited by the payment of at least $1,915 by the contracting parties. His remedy was then upon the contract, not in tort against the joint tort-feasors. Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 A. S. R. 803; Ross v. Amiret Farmers Elev. Co. 178 Minn. 93, 102, 226 N. W. 417; Ireland v. Waymire, 107 Kan. 384, 191 P. 304; Morse v. La Crosse M. G. & I. Co. 116 Kan. 697, 229 P. 366; Ramsey v. Peterson, 115 Kan. 212, 222 P. 117; Pitt v. Keenan, 124 Kan. 810, 262 P. 567. The bank, although not a party to the contract, might take advantage of its making. Terry v. Munger, 121 N. Y. 161, 24 N. E. 272, 8 L. R. A. 216, 18 A. S. R. 803. In that case plaintiffs had brought an action on implied contract to recover the value of property converted by the defendants. The complaint in that action disclosed the facts as to the conversion and indicated an election to waive the tort and sue on contract. The court sustained the plaintiffs' right to bring the action as on an implied contract, and plaintiffs recovered judgment on that theory against the defendants. Apparently they were unable to collect their judgment. Thereafter they brought suit against Munger, who was not

a defendant in the first action, claiming that Munger participated with the two defendants in the former action in the conversion of the property, and sought to recover from Munger for a conversion. It was held that the plaintiffs had elected to waive the tort by their action on the implied contract and that no recovery for conversion against Munger could be had. We cannot see where plaintiff is in any better case where he has expressly contracted for the same relief sought by the plaintiffs in the first New York case.

In view of our conclusion on the foregoing question, it becomes unnecessary to discuss the question of plaintiff's laches. If laches is available as a defense against a payee of a check whose indorsement thereon is forged, the lapse of time between plaintiff's discovery of the facts and his notice thereof to appellant was so long that with a showing of prejudice a recovery would have been precluded. Brown v. Peoples Nat. Bank, 170 Mich. 416, 136 N. W. 506, 40 L.R.A.(N.S.) 657; Houseman-Spitzley Corp. v. American State Bank, 205 Mich. 268, 277, 171 N. W. 543. Also see Annett v. Chase Nat. Bank, 196 App. Div. (N. Y.) 632, 188 N. Y. S. 7; Stern v. Manhattan Co. 134 Misc. 351, 235 N. Y. S. 634. We do not here decide the question.

The judgment is reversed with directions to enter judgment for the appellant notwithstanding the verdict.

WILSON, Chief Justice, and HOLT, Justice, took no part.

On Application For Reargument.

On March 24, 1933, the following opinion was filed:

PER CURIAM.

The respondent has petitioned for a rehearing and among other things has called our attention to the language in our original opinion in regard to the payment of $390, the first year's interest, by the O'Connells. In the original opinion this was given some weight in connection with the acceptance of the contract obligation instead of the tort liability. The record indicates, as respondent contends, that the payment was made by the O'Connells prior to the alleged execution and delivery of the contract. What is said in the opinion relative to the payment of the $390 is therefore stricken out. That, however, does not in our opinion change the result.

Other matters presented by the petition have been thoroughly considered, but we adhere to the original decision.