**MERCANTILE NATIONAL BANK AT DAL-LAS and Republic National Bank of Dallas, Appellants,**

v.

**C. H. LANGDEAU, Receiver, Appellee.**

Nos. 10711, 10712.

Court of Civil Appeals of Texas.

Austin.

Dec. 9, 1959.

Rehearing Denied Jan. 13, 1960.

Dan Moody, Austin, Leachman, Gardere, Akin & Porter, Dallas, for Republic National Bank of Dallas.

Carrington, Johnson & Stephens, Dallas, for Mercantile National Bank at Dallas.

Cecil C. Rotsch, Austin, Keith, Mehaffy, McNicholas & Weber, Beaumont, Cureton & Lanham, Waco, for appellee.

HUGHES, Justice.

These are venue cases in which the parties have stipulated to the controlling facts and issues.

The controlling facts are that the appellants, Mercantile National Bank at Dallas and the Republic National Bank of Dallas, are, and were at all material times, national banking associations organized and existing under the laws of the United States of America (National Bank Act) with each having its principal and only place of business in Dallas, Dallas County, Texas, and appellee, C. H. Langdeau, Receiver (and his predecessors),[1] was at all such times the duly appointed, qualified and acting Receiver for and had taken charge of all the assets of ICT Insurance Company in receivership proceedings in the 98th District Court of Travis County, a court of competent jurisdiction, and who had been designated as Liquidator for such company by the Board of Insurance Commissions of Texas and who, under the laws and orders of the 98th District Court was authorized to maintain this action for the alleged wrongful acts committed by appellants against ICT Insurance Company.[2]

The question of law presented was stipulated to be:

"The only issue involved in said plea of privilege hearing was the issue of whether the provisions of the federal statutes entitled said Defendants to have said plaintiff's action against them transferred to the state court in Dallas County, Texas, or whether state statutes on venue of such action are controlling."

---

1. The history of prior receivers is stipulated but is not material.

2. The detailed nature of this suit is not material to these appeals except to state that it is a suit for damages based on an alleged conspiracy.

The federal statutes referred to in this stipulation are, and we quote them:

"Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county or municipal court in the county or city in which said association is located having jurisdiction in similar cases." Sec. 94, Title 12 U.S.Code Annotated.[3]

"The district courts shall have original jurisdiction of any civil action commenced by the United States, or by direction of any officer thereof, against any national banking association, any civil action to wind up the affairs of any such association, and any action by a banking association established in the district for which the court is held, under chapter 2 of Title 12, to enjoin the Comptroller of the Currency, or any receiver acting under his direction, as provided by such chapter.

"All national banking associations shall, for the purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 United States Code Annotated, § 1348.[4]

The State statute referred to is Section 21.28, Subsection 4(f) of the Texas Insurance Code, V.A.T.S., which we quote:

"New Lawsuits. The court of competent jurisdiction of the county in which the delinquency proceedings are pending under this Article shall have venue to hear and determine all actions or proceedings instituted after the commencement of delinquency pro-

ceedings by or against the insurer or receiver."

There can be no doubt that if venue of these cases is fixed in Dallas by Federal laws the State statute is of no avail. We quote from Van Reed v. People's National Bank, 198 U.S. 554, 25 S.Ct. 775, 776, 49 L. Ed. 1161:

"National banks are quasi-public institutions, and for the purpose for which they are instituted, are national in their character and within constitutional limits subject to the control of Congress, and are not to be interfered with by State legislative or judicial action, except so far as the law making power of the government may permit."

In Citizens' National Bank of Stamford v. Stevenson, Tex.Com.App., 231 S.W. 364, 366 (opinion by Judge Powell) it is stated:

"It is well settled that, if the federal and state provisions upon any point with reference to national banks conflict, the state rules must yield."

Mr. Justice Hart in Paddock v. Siemoneit, 147 Tex. 571, 218 S.W.2d 428, 434, 7 A.L.R.2d 1062, stated this rule for construing Federal statutes:

"In determining the meaning of Federal laws, this Court is controlled by the decisions of the Supreme Court of the United States. * * * In this instance, however, there does not appear to be any decisions by the United States Supreme Court which is directly in point, and we have to try to arrive at the meaning of the statute from that Court's opinions in more or less analogous cases."

---

3. This section is a part of Chapter 2 of Title 12 of the United States Code Annotated. Title 12 is entitled: "Banks and Banking." Chapter 2 of said Title, in which is included Section 94, is entitled "National Banks," Section 94 is entitled "Venue of suits."

4. This Section is a part of Chapter 85 of Title 28 of the United States Code Annotated. Title 28 is entitled: "Judiciary And Judicial Procedure." Chapter 85 of said Title, in which is included Section 1348 is entitled: "District Courts; Jurisdiction." Section 1348 is entitled: "Banking association as party."

We will now undertake a determination of the question presented from the decided cases of the United States Supreme Court either directly in point or "from that Court's opinions in more or less analogous cases."

For a better understanding of these opinions we give the following condensed history of Section 94 of Title 12, supra:

The Act of June 3, 1864, known as the National Bank Act (13 Stat. 99) contained the following as a part of Section 57:

"Suits, actions, and proceedings, against any association under this act, may be had in any circuit, district, or territorial court of the United States held within the district in which such association may be established; or in any state, county, or municipal court in the county or city in which said association is located, having jurisdiction in similar cases."

In the Revised Statutes of the United States, enacted in 1873, there was no statute comparable to Section 57 of the National Bank Act of June 3, 1864. This omission was remedied by the Act of February 18, 1875 (18 Stat. 316, 320) which added a statute identical with present Section 94, Title 12.

When the corrective legislation of 1875 was enacted however it was an amendment, by addition, to Section 5198 of the 1873 revision of the United States statutes, which Section dealt only with penalties for charging usurious interest. These provisions were separated in the United States Code adopted June 1926 and the provision relating to penalties was given Section number 86 and the provision as to venue was given Section number 94.

No other changes were or have been made in Section 94.

The predecessor of Section 94 was construed by the United States Supreme Court in First National Bank of Charlotte v. Morgan, 1889, 132 U.S. 141, 10 S.Ct. 37, 38, 33 L.Ed. 282. There a national bank was sued in a State Court in a county other than the one in which it was located. No objection on this account was made until the case reached the State Supreme Court. In holding that the privilege of being sued in its home county could be waived by the bank the United States Supreme Court, Mr. Justice Harlan speaking, said:

"This exemption of national banking associations from suits in state courts, established elsewhere than in the county or city in which such associations were located, was, we do not doubt, prescribed for the convenience of those institutions, and to prevent interruption in their business that might result from their books being sent to distant counties in obedience to process from state courts. First Nat. Bank of Bethel v. Pahquioque Bank, 14 Wall. 383, 394, 81 U.S. 383, 394 [20 L.Ed. 840, 842]; Crocker v. Marine Nat. Bank, 101 Mass. 240. But, without indulging in conjecture as to the object of the exemption in question, it is sufficient that it was granted by congress, and if it had been claimed by the defendant, when appearing in the superior court of Cleveland county, must have been recognized. The defendant did not, however, choose to claim immunity from suit in that court. It made defense upon the merits, and, having been unsuccessful, prosecuted a writ of error to the supreme court of the state, and in the latter tribunal, for the first time, claimed the immunity granted to it by congress. This was too late. Considering the object as well as the words of the statute authorizing suit against a national banking association to be brought in the proper state court of the county where it is located, we are of opinion that its exemption from suits in other courts of the same state was a personal privilege that it could waive, and which, in this case, the defendant did waive, by appearing and making defense with-

out claiming the immunity granted by congress. No reason can be suggested why one court of a state, rather than another, both being of the same dignity, should take cognizance of a suit against a national bank, except the convenience of the bank. And this consideration supports the view that the exemption of a national bank from suit in any state court except one of the county or city in which it is located is a personal privilege, which it could claim or not as it deemed necessary."

In Cope v. Anderson, 1947, 331 U.S. 461, 67 S.Ct. 1340, 1343, 91 L.Ed. 1602, a receiver of an insolvent Kentucky national bank brought suit in Federal District Courts in Ohio and Pennsylvania to enforce stockholders' assessments against Ohio and Pennsylvania stockholders. The question was whether Kentucky statutes of limitation or limitation statutes of Ohio and Pennsylvania controlled, KRS 413.120; Gen.Code, §§ 11222, 11234; 12 P.S. §§ 31, 39. In holding that the cause of action arose in Kentucky and its statutes applied, the Court, Mr. Justice Black speaking, stated:

"Many provisions of federal law make national banks, in important aspects peculiarly local institutions. See 12 U.S.C. §§ 30, 33, 34a, 36, 51, 62, 72, 12 U.S.C.A. §§ 30, 33, 34a, 36, 51, 62, 72. For jurisdictional purposes, a national bank is a 'citizen' of the state in which it is established or located, 28 U.S.C. § 41(16), 28 U.S.C.A. § 41(16), and in that district alone can it be sued. 12 U.S.C. § 94, 12 U.S.C.A. § 94."

The one United States Supreme Court case upon which appellees rely is Casey v. Adams, 1880, 102 U.S. 66, 68, 26 L.Ed. 52.[5] There proceedings were taken against a national bank in a State court in a parish other than the one in which it was located, in or as a result of a suit to foreclose a mortgage on land. The suit was brought in and the proceedings held in the parish in which the land was situated. The bank objected that it could be sued only in the county of its location. In an opinion delivered by Mr. Chief Justice Waite, the Court held:

"The federal question in this case is, whether a national bank can be sued in a state court in a local action in any other county or city than that where the bank is located. By sec. 5198, R.S. [12 U.S.C.A. § 94], it is provided that 'Suits, actions and proceedings against any association under this title (the National Banks) may be had in any circuit, district or territorial court of the United States held within the district in which such association may be established, or in any State, county or municipal court in the county or city in which said association is located, having jurisdiction in similar cases.' This, we think, relates to transitory actions only, and not to such actions as are by law local in their character. Section 5136 [12 U.S.C.A. § 24] subjects the banks to suits at law or in equity as fully as natural persons, and we see nowhere in the Banking Act any evidence of an intention on the part of Congress to exempt banks from the ordinary rules of law affecting the locality of actions founded on local things. The distinction between local and transitory actions is as old as actions themselves, and no one has ever supposed that laws which prescribed generally where one should be sued, included such suits as were local in their character, either by statute or the common law unless it was expressly so

---

5. Appellants do cite and quote the following from Bank of America v. Whitney-Central National Bank, 261 U.S. 171, 43 S.Ct. 311, 312, 67 L.Ed. 594:

"Whether a national bank could under any circumstances be subjected, without its consent, to a suit in a state or district, other than that in which it is authorized to locate its banking house, we have no occasion to consider in this case."

declared. Local actions are in the nature of suits in rem, and are to be prosecuted where the thing on which they are founded is situated. To give the Act of Congress the construction now contended for, would be, in effect, to declare that a national bank could not be sued at all in a local action where the thing about which the suit was brought was not in the judicial district of the United States within which the bank was located. Such a result could never have been contemplated by Congress.

"The proceeding in this case was clearly local in its nature. It related to property in the Parish of La Fourche, which had been seized and sold under process from the district court of that parish. The proceeds of the sale were in that court, and could not be distributed until 'a conflict of privileges' arising between creditors was settled."

We agree with appellee that Art. 21.28, Section 4(f), V.A.T.S. creates a statutory local action. We do not agree that such actions are necessarily local in nature as that term was used by the Supreme Court in Casey against Adams. This action, a suit for damages for alleged malfeasance, is by no stretch of the imagination local in nature or in character. Morris v. Mo. Pac. Ry. Co., 78 Tex. 17, 14 S.W. 228, 9 L.R.A. 349; Miller v. Howell, 234 S.W.2d 925, Ft. Worth Court of Civil Appeals.

This, to our satisfaction, distinguishes Casey against Adams and prevents it from being a case directly in point. We are convinced, too, that Casey does not represent the law as reflected by subsequent United States Supreme Court decisions, supra. Those decisions, in our opinion, fix venue of actions against national banks in State courts only in the county in which the bank is located, in accordance with the plain wording of Section 94.

Appellee does not discuss the Federal District and Circuit Court decisions cited by appellants and disposes of them by saying:

"Decisions by the U. S. Circuit Courts and decisions by the U. S. District Courts in suits filed in Federal Courts have no bearing and are unrelated to the question because State Venue Statutes do not control or purport to govern the venue of such suits."

Appellee does, however, cite nine State cases,[6] each from a separate State in support of its position. These cases (one or more) are to the effect that Section 94 applies (1) only in usury cases (2) in transitory cases or (3) that it is permissive (4) that it was repealed by Section 1348, supra, or (5) as stated by the New Jersey Supreme Court in Cassatt [9 N.J.Misc. 222, 153 A. 378]:

"We are inclined to think that the direct application of the statute is to jurisdiction and that it is not in such potent control of venue as to be imperative in the present case."

6. "Texas: Guerra v. Lemburg [Tex.Civ. App.] 22 S.W.2d 336, (1929) (Writ. Dis.) New York: Chafee [Chaffee] v. Glen[s] Falls National Bank & Trust Co. [204 Misc. 181] 123 N.Y.S.2d 635 (1953). Affirmed [283 App.Div. 694] 128 N.Y.S.2d 539; Appeal to Court of Appeals denied [283 App.Div. 793] 129 N.Y.S.2d 237. Michigan: Levitan v. Houghton [Nat.] Bank, 140 N.W. 1019, 174 Mich. 566 (Sup. Ct.1913). Minnesota: DeCock v. O'Connell [188 Minn. 228], 246 N.W. 885 [248 N.W. 829], 86 A.L.R. 41 (Sup.Ct.1933).

North Carolina: Curlee v. [Nat.] Bank, 187 N.C. 119, 121 S.E. 194 (Sup.Ct.1924). Wisconsin: Brust v. [First Nat.] Bank, 184 Wis. 15, 198 N.W. 749 (Sup.Ct. 1924). New Jersey: Cassatt v. [First Nat.] Bank, 9 N.J.Misc. 222, 153 A. 377 (Sup.Ct.1931). Alabama: [First Nat.] Bank [of Linden] v. Alston [231 Ala. 348], 165 So. 241 (Sup.Ct.1936). California: Fresno National Bank v. Superior Court, 83 Cal. 491, 24 P. 157 (Sup. Ct.1890)."

The Federal District and Circuit Court cases cited by appellants are listed below [7] as are the State Court decisions upon which they rely.[8]

If the question here presented has not been decided by the United States Supreme Court or if the meaning of Section 94 cannot be gleaned from its opinions in more or less analogous cases and if the question is an open one for this Court then we state that we have considered all State cases and Federal decisions from lower courts for their persuasiveness. Especially have we been impressed by the thorough treatment of the matter and the sound reasoning found in the Monarch Wine case from California and we quote the following from that opinion:

"The federal cases interpreting section 94 seem to establish three propositions: (1) Where *actions against a national bank are brought in a state court outside the state where it is located the action must be dismissed because there is no procedure for transferring the action from one state to another.* See Schmitt v. Tobin, D.C., 15 F.Supp. 35, where an action brought in Nevada against a California national bank was dismissed. (2) Where the actions are brought in a federal court in a district other than that in which the bank is located the actions formerly were required to be dismissed as the federal law provided no procedure for transfer. See Leonardi v. Chase Nat. Bank of City of New York, 2 Cir., 81 F.2d 19, where the court dismissed an action brought against a national bank in a federal court in a district other than that of the bank's residence. To the same ef-

fect, International Refugee Organization v. Bank of America, D.C., 86 F. Supp. 884, and Buffum v. Chase National Bank of City of New York, 7 Cir., 192 F.2d 58. Such a procedure has now been provided and the case would now be transferred to the proper district. Plaintiffs concede that the law as to these two propositions is as above stated. (3) Where the action is brought in a state court of a state in which the bank is located but not in the county of its location, and where state law has a procedure for change *of venue, the action must not be dismissed,* but upon application must be transferred to the county in which the bank is located.

\* \* \* \* \* \*

"The New York courts since 1883 in dealing with the question of whether *the statute in question is mandatory or permissive,* have held it mandatory, saying, 'Where the meaning of a federal statute is to be ascertained, the decisions of the federal courts construing the statute are controlling on the state courts.' Raiola v. Los Angeles First Nat. Trust & Savings Bank, 133 Misc. 630, 233 N.Y.S. 301, 305; see also Crofoot v. Giannini, supra, 92 N.Y.S.2d 191, and Rabinowitz v. Kaiser-Frazer Corporation, 198 Misc. 312, 96 N.Y.S.2d 638. While these were cases dealing with actions against national banks whose residences were *outside the state* we can see no difference in the language or the effect of that portion of section 94 referring to suits not brought in the state of the bank's residence and those not brought in the county of its residence. Crocker v. Marine National

7. Buffum v. Chase National Bank, 7 Cir., 192 F.2d 58, certiorari denied 342 U.S. 944, 72 S.Ct. 558, 96 L.Ed. 702. International Refugee Organization v. Bank of America, D.C., 86 F.Supp. 884. Schmitt v. Tobin, D.C., 15 F.Supp. 35. Leonardi v. Chase National Bank, 2 Cir., 81 F. 2d 19, certiorari denied 298 U.S. 677, 56 S.Ct. 941, 80 L.Ed. 1398.

8. County of Okeechobee v. Florida Nat. Bank, 1933, 112 Fla. 309, 150 So. 124. Monarch Wine Company v. Butte, 1952, 113 Cal.App.2d 833, 249 P.2d 291, 292. Zarbell v. Bank of America Nat. Trust & Savings Association, 1958, 52 Wash.2d 549, 327 P.2d 436. Crofoot v. Giannini, 1949, 196 Misc. 213, 92 N.Y.S.2d 191. Rabinowitz v. Kaiser-Frazer Corporation, 1950, 198 Misc. 312, 96 N.Y.S.2d 638.

Bank of City of New York, 101 Mass. 240, and Burns v. Northwestern Nat. Bank of Minneapolis, Minn., supra, 65 N.D. 473, 260 N.W. 253, held the same way as the cited New York cases.

 \*   \*   \*   \*   \*   \*

"Guerra v. Lemburg, Tex.Civ.App., 22 S.W.2d 336, contrary to the decisions in Leonardi v. Chase Nat. Bank of City of New York, supra, 81 F.2d 19; Schmitt v. Tobin, supra, 15 F. Supp. 35, and Rabinowitz v. Kaiser-Frazer Corp., supra, 96 N.Y.S.2d 638, held that section 94 applied only to actions for penalties for usury. Cassatt v. First Nat. Bank, 153 A. 377, 9 N.J. Misc. 222, without discussing the federal cases on the subject and in spite of them, held section 94 applied to jurisdiction and not to venue.

"The language in Buffum v. Chase Nat. Bank of City of New York, supra, 192 F.2d 58, at page 60, although the court was dealing with an action brought against a bank in a state other than that of its residence, applies here: 'The issue here then is not one of jurisdiction of the subject matter, but one as to the proper venue, the proper locality. Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, at page 168, 60 S.Ct. 153, 84 L.Ed. 167. It seems clear that the proper venue, in the absence of waiver or consent, is determined by Section 94 of 12 U.S. C.A.' \* \* \*

"In spite of the above decisions of some state courts we believe (1) we are bound by the decisions of the United States courts on the interpretation of section 94; (2) those courts have held directly in the Charlotte and Casey cases as to suits brought in the wrong county of a state and indirectly in other cases dealing with suits brought in the wrong state or in the wrong federal district, that section 94

is mandatory. \* \* \* If it was intended that the national bank could be sued in any county of the state, it would have been sufficient for the section to state 'in any state, county or municipal court of the state in which the bank is located.' But the section said the action is to be brought in the 'court in the county or city' in which the bank is located. (3) The plain and logical reading of the section shows that there is no difference in meaning between the various portions of the section, and (4) defendant is entitled as a matter of right under section 94 to a change of venue to the county of its residence. Hence the order denying its motion for such change was erroneous."

Our opinion, influenced by the decision of Circuit Court of Appeals in Leonardi (footnote 7), with which we agree, is that the San Antonio Court in Guerra erroneously concluded that Section 94 applied only to actions for penalties arising from usury.

In our study of this case we have been struck by the difficulty encountered by courts in applying or construing a statute (Section 94) which to us is plain and unambiguous. While it was entangled with the usury provisions of the federal law, confusion was understandable.

Since the separation of Section 94 from the usury provisions of Title 12 (1926) we can find no tenable ground upon which to construe a plain statute in any manner contrary to its express wording.

That this statute should be construed as merely permitting a national bank to be sued in the county of its location is to attribute to the Congress little knowledge of the law of venue. Both the common law and the Spanish law permitted suits to be maintained where the defendant resided [9] and such is the general rule of the States.[10]

9. Vol. 38, Tex.Law Review p. 36. Spanish Influence on the Texas Law by Joseph Webb McKnight.

10. Vol. 92 C.J.S. Venue §§ 4, 6, 7 and 82.

The judgments of the Trial Court are reversed and these causes are remanded with instructions to render judgment sustaining appellants' pleas of privilege and to transfer these causes as to these appellants to any Civil District Court of Dallas County in accordance with the provisions of Rule 89, Texas Rules of Civil Procedure.

Reversed and remanded with instructions.