**TOWN OF EAST TROY, Plaintiff,**

v.

**SOO LINE RAILROAD COMPANY, Defendant.**

No. 75–C–122.

United States District Court, E. D. Wisconsin.

Sept. 5, 1979.

---

John P. Graves, Jr., Rockford, Ill., for plaintiff.

Reginald W. Nelson, Whyte & Hirschboeck, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

This action is before me on the alternative post-trial motions of the defendant Soo Line Railroad for judgment notwithstanding the verdict, for an alteration in the judgment, and for a new trial. All of these motions will be denied.

This action arose out of the derailment of one of the railroad's trains in the town of East Troy in July, 1974. The plaintiffs alleged that the derailment caused carbolic acid manufactured by Georgia Pacific to leak from Soo Line's railway tanker car, resulting in the contamination of the water wells and septic systems of many individuals residing in the Lake Beulah area of the town.

Prior to trial, the individual plaintiffs settled their claims and the defendant Georgia Pacific was dismissed from the suit, leaving the town and the railroad as the only parties at trial. The town's allegations included a claim that the railroad was negligent in several respects. Such negligence allegedly produced a public nuisance in the form of water pollution and septic system contamination to the prejudice of the "health, comfort, safety and property of certain of the residents, school children, property owners, taxpayers, tourists and guests of the plaintiff town . . . ." Subsequent to the derailment and consequent contamination, the town undertook the function of furnishing water to residents of the Lake Beulah area who had previously obtained water from private wells. In this suit the town sought in excess of 1 million dollars in damages for the cost of the new water system and for other miscellaneous expenses it incurred as a result of the acid spill.

Following nine days of trial, the jury found that the railroad was negligent with regard to the operation of the train and the maintenance of the tracks in question and that this negligence was a proximate cause of a public nuisance. The jury also found that $500,000 would reasonably compensate the town for "any damages it reasonably incurred as a result of the derailment and phenol acid spill." Judgment in that amount was entered in favor of the plaintiff on June 14, 1979.

## I. MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

The defendant's motion for judgment notwithstanding the verdict is based on two contentions: (1) that any expenses incurred by the plaintiff do not constitute injuries peculiar to the town of East Troy within the meaning of § 823.01, Wis.Stats., and (2) that the entire amount of expenses incurred by the town was covered by a grant made to the town by the United States Department of Housing and Urban Development. In connection with the railroad's pretrial motions, I considered and rejected these

arguments in a written decision and order dated April 5, 1979. Since I find no reason to change the conclusion reached in that decision, the railroad's motion for judgment notwithstanding the verdict will be denied.

■ I note that subsequent to my decision of April 5, 1979, a decision has been rendered which supports my conclusion that the collateral source doctrine applies to funds given to a plaintiff by a government agency. In *Roundhouse v. Owens-Illinois, Inc.*, 604 F.2d 990 (6th Cir. 1979), the plaintiff fish farmers were forced to destroy sick fish sold to them by the defendant. The court held that compensation received by the plaintiffs from the state of Michigan did not justify reducing the plaintiffs' recovery from the defendant, since under the collateral source doctrine, money received from an independent source will not diminish recovery from a wrongdoer.

## II. MOTION TO ALTER JUDGMENT

The defendant railroad has moved the court to change the answer to question 6 of the special verdict by striking the answer $500,000 and inserting instead an amount not in excess of $125,000. The railroad contends that the plaintiff failed to introduce sufficient evidence to justify greater damages and that as a result, the jury's answer was based on speculation and conjecture. I disagree.

The spilling of a dangerous acid which contaminated the water table in East Troy required that the town take difficult remedial action. In the course of taking such action, the town retained the services of a myriad of professionals: engineers, planners, excavators, chemists, attorneys, geologists, plumbers and hydrogeologists, among others.

■ With regard to the compensation of these people as well as other expenses incurred by the town, the plaintiff introduced a substantial quantum of evidence at trial. The plaintiff introduced bills, cancelled checks demonstrating the payment of those bills, and itemized statements indicating the type of work done by different people, the amount of time spent on such work, and the rate of compensation charged for the work. One of the engineers who spent time working for the town testified as to the reasonableness of the fees he charged, which were the highest of any charged by engineers working on the acid spill. Finally, several witnesses testified as to the remedial steps that were taken by the town. The railroad did not introduce any evidence indicating that the professional fees in this case were unreasonable. In my opinion, this evidence was sufficient to allow the jury to make a rational judgment as to the reasonableness of the expenses incurred by the town. Moreover, I find that the figure of $500,000 arrived at by the jury was adequately supported by the evidence.

■ The defendants rely on two arguments in challenging the jury's findings as to damages. They briefly argue that at least one of the engineering firms retained by the town made recommendations of action which either were not followed or were ultimately abandoned. On this basis, the defendant suggests that some of the expenses incurred by the plaintiff were "unnecessary." The damage to East Troy's water supply which the jury found resulted from the railroad's negligence required remedial action, the course of which was not clear even to experts. The town was entitled to compensation for expenses incurred as a result of reasonable remedial steps, even if by hind-sight some of those steps may have been missteps. Since the railroad has not demonstrated that any of the approaches taken by the town or its experts were unreasonable, the town is entitled to the compensation it received from the jury.

The railroad also argues that Wisconsin law requires that the reasonableness of the fees charged by professionals retained by the town could not be established except by expert testimony as to that subject. The railroad's position is supported by neither law nor logic. None of the cases relied on by the defendant overturned a jury's finding as to damages which was based on reasonable evidence. In two of the cases, the Wisconsin supreme court overturned

jury verdicts in which the jury had apparently ignored the uncontradicted testimony of experts regarding the value of professional services. *Estate of Watzek*, 211 Wis. 50, 247 N.W. 330 (1933); *Brust v. First National Bank*, 184 Wis. 15, 198 N.W. 749 (1924). In the third case, a finding by the trial judge of the value of professional services was overturned by the supreme court when it found no evidence in the record to support the trial judge's finding. *Tullgren v. Karger*, 173 Wis. 288, 181 N.W. 232 (1921).

■ None of the foregoing cases requires the conclusion that a jury finding regarding the value of professional services, which is in fact supported by substantial evidence, must be overturned simply because an expert has not testified regarding the reasonableness of the fees charged by each professional. Moreover, the defendant's contention regarding Wisconsin law is refuted by the case of *Gerbing v. McDonald*, 201 Wis. 214, 229 N.W. 860 (1930), in which the court stated:

"Error is claimed because the court permitted the jury to assess doctor's bills as an element of plaintiff's damages in the absence of evidence of the reasonable value or necessity of the services charged for. The weight of authority seems to be that where the character of the injury and of the treatment and the services of the physician and the amount paid for the service are fully proved, this constitutes evidence from which the jury may allow damages although there is no proof of either necessity or the reasonable value of the services. (Citations omitted). Mere proof of injury and employment of and treatment by a physician entitles the jury to make an award for the service, in the absence of evidence of necessity for or the value of the service. (Citations omitted)." Id. at 218–19, 229 N.W. at 862.

While the fees in the instant case are significantly higher than those in *Gerbing*, they are substantiated by the record and "do not appear beyond the bounds of reason." Id.

### III. MOTION FOR A NEW TRIAL

The railroad has moved for a new trial on a number of grounds with which I will deal separately.

### A. Damages

The railroad urges that a new trial be granted because the damages found by the jury are allegedly "excessive, unsupported by requisite evidence, and contrary to the weight of the evidence." For the reasons stated above, I find that the jury's finding as to damages was reasonable in light of the evidence, and thus a new trial is not justified on this ground.

### B. Jury Instructions

The railroad also claims that its motion for a new trial should be granted because of errors in the jury instructions. The first such instruction dealt with the doctrine of res ipsa loquitur. The railroad, while admitting that the doctrine is generally applicable to derailment cases, maintains that the court erred in giving an instruction based on that doctrine, because there was direct evidence of the railroad's negligence in the record. In *Utica Mutual Insurance Co. v. Ripon Cooperative*, 50 Wis.2d 431, 439, 184 N.W.2d 65, (1971), the court discussed the factual context in which giving an instruction on res ipsa loquitur is proper:

"When both parties have rested and the case is ready for the jury, either of two conditions may exist which would render it error to give the *res ipsa loquitur* instruction. The plaintiff may have proved too little or he may have proved too much. For example, if, on the one hand, there has been no evidence which would remove the causation question from the realm of conjecture and place it within the realm of reasonable inferences, then the plaintiff has proved too little, and the doctrine of *res ipsa loquitur* is of no avail, and the case must be dismissed.

"On the other hand, it is possible that the plaintiff's evidence of negligence in a given case has been so substantial that it provides a full and complete explanation of the event, if the jury chooses to accept

it. In that case, causation is no longer a mystery, and the *res ipsa loquitur* instruction would be superfluous and erroneous. *Fehrman v. Smirl*, (1964), 25 Wis.2d 645, 131 N.W.2d 314; *Puls v. St. Vincent Hospital* (1967), 36 Wis.2d 679, 154 N.W.2d 308; and *Knief v. Sargent, supra,* [40 Wis.2d 4, 6, 161 N.W.2d 232].

"There is, of course, a middle ground between these two extremes where the giving of the instruction would be proper. Prosser describes that situation as follows:

'. . . the introduction of some evidence which tends to show specific acts of negligence on the part of the defendant, but which does not purport to furnish a full and complete explanation of the occurrence does not destroy the inferences which are consistent with the evidence, and so does not deprive the plaintiff of the benefit of res ipsa loquitur.' Prosser, *Law of Torts* (Hornbook Series) (3d ed.), ch. 6, p. 236, sec. 40."

■ In my opinion, the evidence introduced by the plaintiff at trial fell into the "middle ground" discussed above, thereby entitling the town to the res ipsa loquitur instruction. The plaintiff's expert, Paul Jones, testified as to a number of acts done by the railroad which could have been fairly construed by the jury to have been negligent or even wilful. However, Mr. Jones' testimony neither established which of those acts, if any, actually led to the derailment of the train in question nor precluded the possibility that other acts on the part of the railroad might have caused the derailment. Thus, while I found that the plaintiff had submitted sufficient evidence to remove the question of causal negligence from the "realm of conjecture," since that evidence did not completely explain the reason for the derailment, the instruction on res ipsa loquitur was appropriate. *Lee v. Milwaukee Gas Light Co.*, 20 Wis.2d 333, 122 N.W.2d 374 (1963).

The railroad also challenges instructions given regarding the definition of public nuisance, the police power of a town board, the right of a town to recover damages from nuisance, and the duty of the town to take steps to obviate injury. I considered these issues both at trial and before trial on the railroad's motion for summary judgment, and I find no reason now to change my conclusion regarding them.

### C. Evidentiary Rulings

The railroad argues that various types of evidence were improperly excluded at trial. As to the testimony of experts, my decision and order of March 23, 1979, explains my rationale for barring the testimony of experts whose identities as experts were not revealed until after the discovery deadline had passed. The court's requirement regarding the disclosure of experts was applied to both parties; one of the plaintiff's experts as well as several of the railroad's experts were barred from testifying as a result of the court's order of March 23, 1979. I find no merit in the railroad's other contentions regarding the admissibility of evidence at trial.

### D. Sufficiency of the Evidence With Regard to Public Nuisance

■ The jury was instructed that for a public nuisance to exist a large number of people must be affected. *State v. Michels Pipeline Construction Co.*, 63 Wis.2d 278, 217 N.W.2d 339 (1974). The evidence indicates that hundreds of people were threatened by the spilling of the phenol acid that resulted from the train derailment, and thus the jury's finding of a public nuisance is supported by the evidence.

### F. Depositions

■ The railroad maintains that the plaintiff read portions of certain depositions out of context and thereby prejudicially distorted the testimony contained therein. Since the railroad's attorneys had in each instance the opportunity to read to the jury those portions of the depositions in question which they felt were pertinent, I do not believe that the plaintiff's use of those depositions resulted in any unfairness to the railroad.

## IV. CONCLUSION

Therefore, IT IS ORDERED that the alternative motions of the Soo Line Railroad Company for judgment notwithstanding the verdict, an order altering the judgment or for a new trial be and hereby are denied.